## Thomas *v*. Tomay, Appellant.

Argued October 7, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

300

*David E. Cohen,* for appellant.

*Samuel J. Feigus,* with him *Wade K. Newell,* for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, January 5, 1959:

These appeals are from the respective judgments entered in three separate trespass actions instituted to recover damages for personal injuries in two of the cases and for a death in the third, all of which resulted from a collision between two passenger automobiles.

At the outset, we are impelled to remark the great length of time that was allowed to elapse before these cases were brought to trial—a circumstance which is all the more regrettable since they must go back for retrial because of reversible error, harmful to the appellant, which the record discloses.

About 1:45 in the morning of November 4, 1951, a sedan, driven by Theodore Frazee, seventeen, of Friendsville, Maryland, while traveling south from Pittsburgh toward Uniontown on Highway Route 51,

collided with a coupe driven by Frank Tomay, Jr., on his way home, a few miles north of the scene of the accident. There were two guest passengers in Frazee's automobile, namely, Richard Thomas and James Shultz, both eighteen. Tomay, who was the sole occupant of his car, was a steelworker, twenty-nine years old, unmarried, and living with his parents. His injuries immediately rendered him unconscious and he died four hours later in a local hospital without having regained consciousness. Frazee and his two companions were seriously injured but all of them survived.

The three trespass actions, which we have already noted, were as follows: Mary Tomay, administratrix of the estate of Frank Tomay, Jr., sued Theodore Frazee, under the wrongful death and survival statutes, to recover damages for her decedent's death; and the respective guardians of Richard Thomas and James Shultz, Frazee's passengers, brought separate suits against Mary Tomay, administratrix of the estate of Frank Tomay, Jr., to recover damages for their personal injuries. In each of the two latter actions, the defendant administratrix brought Theodore Frazee upon the record as an additional defendant.

Route 51 between Pittsburgh and Uniontown runs in a generally north-south direction. At the place of the collision it was a 24-foot two-lane macadamized roadway curving sharply to the right, looking south. It was intersected from the east on the outside of the curve by a 16-foot macadam legislative route on which there was a stop sign at its juncture with Route 51.

The night of the accident was dark and rainy with some light intermittent snowfall. Frazee and his two companions had left Friendsville, around 8 o'clock that evening, intending to go to Meadville in Northwestern Pennsylvania, to visit Shultz's sister. Having traveled from Friendsville to Uniontown, Frazee turned north onto Route 51. When they reached the south end of

the Liberty Tubes in Pittsburgh they decided to turn back because of the bad weather conditions. So, at the time of the collision, Frazee was retracing his course south on Route 51.

Frazee, when called as a witness for the minor plaintiffs, testified that as he approached the intersection from the north he was traveling about 45 miles an hour on his right side of the road and had slowed up a little when he started into the curve; he stated that he could not see if anything was coming because it was a blind curve to the right; that he had seen no cars traveling in front of him nor had he seen any approaching; he testified, "the first thing I know I felt a jar in front of the car; some kind of an impact." Frazee admitted on cross-examination that he had testified at five different places in the record of the coroner's inquest that he did not know what had happened. Thomas, who was called as a witness in behalf of Shultz, testified that he saw a flash of lights coming from his left immediately before the impact occurred. Likewise Shultz, who was called as a witness in behalf of Thomas (each was incompetent to testify for himself), stated that he saw a pair of lights "coming from our left, come into our line of traffic, and that is all I remember."

At the time of the accident a Mr. and Mrs. Albert Lessick were traveling north on Route 51 from Uniontown. Mrs. Lessick testified that as she and her husband approached the intersection, where the collision occurred, she saw a car coming out of the legislative route onto Route 51. She said she "saw the car coming out of the intersection, moving, and a crash and that is all I could remember." She did not see the other car involved in the collision until after the accident. She also testified that she had not seen any car in front of them as she and her husband traveled north on Route 51. Mr. Lessick, who was driving his car,

testified that he had not seen any car traveling in front of them as they approached the intersection. He testified, however, that, although he was looking ahead on Route 51, he did not notice any car coming out of the side road as his wife had said she did. According to Mr. Lessick they were approximately an eighth of a mile south of the intersection at the time Mrs. Lessick says she saw the moving car and heard the crash.

Tomay had left the home of a young lady, on whom he had been calling in Uniontown, approximately 1:30 A.M. or just 15 minutes prior to the accident. From his place of departure in Uniontown the distance to the intersection where the collision occurred, traveling by Route 51, was 6.1 miles, and by way of the circuitous road over the legislative route to Route 51, the distance was 11 miles.

After the collision, both cars were found south of the intersection. The various witnesses were in substantial agreement as to the position of the cars at that time. A state policeman who arrived at the scene some 30 minutes after the accident, testified that the Tomay car was south of the center of the intersection in the northbound lane of traffic. It was perpendicular to the center of the highway with its front end north or slightly over the center line. The Frazee automobile, just north of the Tomay car, was facing southeast across the center line with its right front wheel and its left rear wheel resting on the center line so that approximately half of the vehicle was in the northbound lane of traffic. A nearby service station operator, who was called as a witness by Tomay's administratrix, testified that the right front end of the Tomay car was 36 feet south of the intersection and that the rear end of the Frazee car was 14 feet south of the intersection, the front ends of the two cars being approximately four feet apart. All of the witnesses to the po-

sition of the cars after the accident, viz., Mr. Lessick, the state policeman and the service station operator, were in agreement that (due no doubt to the wet condition of the highway) there were no skid or other tire marks visible on the highway. The police officer testified that dirt and parts of each vehicle were found on the center white line south of the intersection. The entire front end of the Frazee automobile was extensively damaged, and the Tomay car had similar damage to its right front area.

After respective counsel for Shultz, Thomas and the Tomay Estate had rested their cases but before rebuttal evidence had been received, counsel for Frazee moved for a compulsory nonsuit of the Tomay case against him and also in Thomas' and Shultz's suits wherein he had been joined as a defendant, on the ground that no evidence had been adduced from which the jury could infer negligence on his part. The trial judge sustained the motions and exonerated Frazee of all liability by taking the cases against him from the jury. Counsel for Shultz and Thomas then offered rebuttal testimony and their cases against the Tomay Estate were then submitted to the jury, which found substantial verdicts in favor of the parents of both Shultz and Thomas as well as for each of the minors themselves against the Tomay Estate.

Timely motions were made by the Tomay Estate for a new trial, for judgments n.o.v., and for the removal of the compulsory nonsuit which the trial judge had entered in the Tomay Estate's suit against Frazee. After argument, the court en banc entered orders overruling all of the motions and entered judgments against the Tomay Estate on the verdicts, from which the present appeals were taken.

Under the facts of these cases, which were tried together, it was error for the court to exculpate Frazee

as a matter of law. The entry of a compulsory non-suit is justifiable only in a clear case concerning whose facts the minds of reasonable men cannot in good conscience differ: *Zanko v. Semmel*, 379 Pa. 242, 247-248, 108 A. 2d 700. The present record is indeed a long way off from disclosing such a situation.

The trial court based its action on the conclusion that negligence on the part of Frazee, as the proximate cause of the collision, had not been proven. The evidence as to how the collision occurred and whose fault it was is meager to say the least. In any event, we are unable to see how the trial court could either nonsuit the Tomay action against Frazee or exculpate him from all responsibility for the accident, *as a matter of law*, in Thomas' and Shultz's actions against Tomay's estate, wherein he had been joined as an additional defendant. Tomay, whose mouth was closed by his soon-to-follow death from his injuries without regaining consciousness, is attended by a presumption that he was exercising due care for his own and others' safety at the time of the accident. The testimony about his having entered Route 51 from the intersecting legislative road, without more in such relation, would not convict him of having negligently entered Route 51. There is no competent testimony as to the speed of Tomay's automobile preceding the collision or that he was otherwise driving carelessly.

On the other hand, whether Frazee, in driving his car into a sharp "blind curve" at a speed of 45 miles an hour in the dark of night in bad, wet and intermittently snowy weather, not even seeing the approaching car until the moment of the ensuing collision, was exercising due care in the circumstances could not properly be concluded in the affirmative by the trial judge as a matter of law. The testimony of Thomas and Shultz, as well as that of Frazee, was vague and

indefinite. Thomas had been asleep until just prior to the impact. And, it was not until about that time, in relation to the happening of the accident, that they saw the light of the Tomay car on their left, which is exactly where his car would be if it was being driven carefully. If, moreover, Tomay entered Route 51 from the intersecting legislative highway, as Mrs. Lessick testified she had seen him do from a point an eighth of a mile distant (her husband, who was driving their car, did not so testify and the physical facts tend to refute her), such entry would not be negligent unless Tomay failed to respect the stop sign; and, if he did so fail, even then, such negligence would not be the proximate cause of the collision unless Tomay drove beyond the near (northbound) lane of Route 51.

In view of the circumstances surrounding the collision, as testified to by Frazee and his passengers, the positions of the automobiles after the accident has possible evidentiary value under proper instructions from the trial judge. Such physical evidence could conceivably give continuing support to the presumption in favor of Tomay that he was driving with care at the time of the collision. The testimony of Frazee and his two passengers that the first they were aware of Tomay's car was when they saw the light at their left side almost simultaneously with the impact, was not capable of fixing with any degree of certainty, the relative positions of the two automobiles just prior to or at the time of the collision. Being oral, the credibility and probative value of their testimony was for the jury and not the court. In that connection the testimony as to the position of the cars after the accident was material. In *Mitchell v. Stolze,* 375 Pa. 296, 298-299, 100 A. 2d 477, the position of the automobiles, there involved, after the collision was held to evidence that the one "car was violating the law of the road at the

time of the impact." Also, in *Flowers v. Dolan,* 155 Pa. Superior Ct. 378, 382, 38 A. 2d 429, evidence as to the relative positions of the cars, after an accident, was deemed sufficient to warrant the submission of the question of causative negligence to the jury.

*Satovich v. Lee,* 385 Pa. 133, 122 A. 2d 212, on which the appellees place great reliance, is not conclusive of the question. In that case, where the plaintiff was traveling north, his car was found in the northbound traffic lane after the accident. The car of the defendant, who had been traveling south, was found in the southbound lane after the collision except that its left front wheel was over the center line about a foot. In the absence of other evidence of negligence, it was held that the trial court properly entered a compulsory nonsuit. Here, in addition to Frazee's testimony as to what he did not see while driving blindly on the inside of a sharp curve on what must have been a slick roadway (the facts are to be taken most favorably to the plaintiff administratrix), the entire front end of the Frazee automobile was in the wrong lane of traffic after the accident with its right front wheel and left rear wheel resting on the center line so that the car was astraddle the center line with one-half on either side.

*Streilein v. Vogel,* 363 Pa. 379, 384-385, 69 A. 2d 97, and *Antonelli v. Tumolo,* 390 Pa. 68, 72, 132 A. 2d 285, which the appellees also cite, have no present applicability. They merely hold that the position in which automobiles involved in a collision are found after the accident does not conclusively establish negligence and, moreover, that such evidence is incapable of supporting an application of the incontrovertible physical facts rule.

The appellant further contends that the trial court erred in permitting Thomas and Shultz to testify in be-

half of each other at the consolidated trial since, by so doing, each was in effect testifying for himself in violation of the prohibition of the Evidence Act of May 23, 1887, P. L. 158, §5(e), 28 PS §322, popularly known as the Dead Man's Act. The "thing in action" in both Thomas' and Shultz's suits is the tort involved in the automobile collision to which Frazee, Thomas, Shultz and Tomay were all parties. The interests of the first three named grew out of the collision and are adverse to the interest of the deceased Tomay, whose right therein, likewise arising, has passed to a party on the record, namely, his administratrix, who represents his interest in the subject in controversy. Conceivably, a question might possibly be raised as to whether Thomas or Shultz was competent to testify for each other even were their suits to be tried separately and not consolidated for trial, the interest of each plaintiff being at all times adverse to Tomay's. But, that point has not been raised and we are not required to consider or pass upon it. Counsel for Tomay's administratrix conceded below that Thomas and Shultz were each competent to testify for the other but that each was incompetent to testify in his own behalf—a result which the consolidated trial served to effectuate. The way to obviate what the appellant complains of would be for her to insist upon separate trials of the Thomas and Shultz suits. Whether the harm from having both of those plaintiffs testify at one consolidated trial of their suits would be a greater disadvantage than the inconvenience and additional expense of separate trials would be for the appellant to ponder.

The judgments appealed from are reversed with a v.f.d.n.