Commonwealth *v.* Hartle, Appellant.

Argued December 13, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Carl Rice,* for appellant.

*W. Roger Fetter,* District Attorney, for Commonwealth, appellee.

OPINION BY WRIGHT, J., March 19, 1963:

At or about eleven o'clock in the evening of June 16, 1961, on Route 45 in Union County, there was a violent collision between a Chevrolet automobile op-

erated by Robert A. Hartle, in which Dean Neese was a passenger, and a Valiant automobile operated by Earl M. Maurer, in which his wife, Barbara P. Maurer, and his parents, Ernest L. Maurer and Beulah E. Maurer, were passengers. As a result of injuries sustained in this collision four persons died, namely, Dean Neese, Earl M. Maurer, Ernest L. Maurer, and Beulah E. Maurer. On March 12, 1962, the Grand Jury indicted Hartle on Bill No. 33 September Sessions 1961 containing four counts, each charging involuntary manslaughter. The case was tried in the Court of Oyer and Terminer at No. 2 March Term 1962. Hartle entered a plea of not guilty. At the conclusion of the Commonwealth's case, counsel for the defendant filed a demurrer to the evidence, which the trial judge overruled. The defendant then rested without offering any testimony. The jury returned a verdict of guilty. Motions in arrest of judgment and for a new trial were dismissed, and sentence was imposed. This appeal followed. The factual situation appears in the following excerpt from the opinion below:

"The defendant being 16 years of age at the time of the alleged offense on June 16, 1961, and a resident of Woodward, Centre County, Pennsylvania, where he resided with his parents, this Court on September 13, 1961, certified the case to the Juvenile Court of Centre County for disposition thereof and such Court, R. PAUL CAMPBELL, President Judge, on October 24, 1961, recertified the case back to Union County for the reason that the defendant desired to enter a plea of not guilty and to stand trial. This Court on November 21, 1961, certified the case to the District Attorney . . .

"Hartle was visiting at Millmont in Union County the evening of June 16, 1961, and was operating a 1952 Chevy sedan belonging to his father with Dean Neese, a friend of his, as a passenger. Another friend of the defendant, Delbert Alters, was also in Millmont that

evening and Alters was operating another car. The two boys, Hartle and Alters, apparently decided to start toward their homes at the same time, both living near one another in Centre County. The road they traveled took them from Hartleton west on Route 45, a two-lane macadam highway, toward the state institution known as the Laurelton State School and Hospital, and from there west to Woodward.

"J. Carl Hinderer was also driving west on that same highway that evening and he testified that just west of Hartleton two cars came up behind his car, the one traveling on the one lane and the other on the other lane of traffic, that the one traveling on the eastbound or passing lane passed his car and stayed on that same lane of traffic and that the other car then turned onto the passing lane, passed his car and then, after the pass had been completed, proceeded onto the westbound or regular lane of traffic and both cars proceeded west, each car on their respective lanes of traffic with the cars so continuing until they rounded a curve out of sight. Hinderer also testified that when the cars passed him he was traveling at a speed of between 65 and 70 and he estimated the speed of such cars to be 75 miles per hour.

"Paul McClintock testified that he was at the Spruce Run Inn and that he observed two cars rounding the curve east of such Inn, observed the cars pass the Inn and travel on west to a point near a house which he identified as the Hackenberg house, that when he first observed such cars one was on the eastbound lane and one on the westbound lane practically side by side and that each car continued on each lane until at a point near the Hackenberg house, which point he identified as a road at the east side of such house. McClintock also expressed an opinion that the cars were traveling 70 miles per hour and further testified that after the two cars had passed by him another car came around

the curve to the east of the Inn, that such car stopped at the Inn and the operator of such car was Hinderer. McClintock also stated that shortly after he lost sight of the cars to the west he heard a deep thud in that direction . . .

"Other testimony developed the fact that west of the Hackenberg house the vehicle of Hartle and a 1960 Valiant sedan traveling east on Route 45 and operated by Earl M. Maurer collided . . .

"There apparently was no eyewitness to the accident and Barbara P. Maurer, wife of Earl M. Maurer, who was also a passenger in her husband's vehicle, and the only survivor other than the defendant, testified that she could not remember anything that happened at the time of the accident.

"It was testified that immediately after the accident the Hartle vehicle came to rest at an angle on the highway facing in a direction almost opposite from that which it had previously been traveling, the front of such vehicle facing south and being 5 feet over the center line of the highway in the eastbound lane of traffic, the balance of the vehicle being in the westbound lane, the Maurer vehicle coming to rest on the eastbound berm, the back end against an embankment at the edge of the berm, such vehicle also headed in a direction almost opposite from that which it had previously been traveling, the front end of each vehicle being 10 to 12 feet distant from each other.

"The two vehicles were extensively damaged and it was testified that the greater damage to the Hartle car was the front and left front, with the damage to the Maurer car being the left front and the left side toward the left front door. Photographs of these vehicles were introduced into evidence showing the damage and the photographs are pictorial evidence of the damages which occurred to each of these vehicles.

"It was testified that there were no visible skid marks on the highway, but there was what was described as a tire mark visible on the westbound lane about 3 feet from the center line, 5 feet in length and 14 inches in width, such mark being 5½ feet from the left rear tire of the Hartle vehicle as such vehicle came to rest, such mark being parallel with the course of the highway travel.

"It was testified that most of the debris from the accident was on the eastbound lane with little debris on the westbound lane.

"The highway was described as being a 2-lane asphalt constructed road, and being 22 feet 6 inches in width, with a berm on the south side of 10 feet and a 7-foot berm on the north side, the two traffic lanes being separated by a white line and the accident happening on an "S" curve.

"Officer Francis Aruscavage of the Pennsylvania State Police testified on behalf of the Commonwealth that he had investigated the accident and a statement of Hartle taken by the officer after the accident was introduced into evidence as follows: 'I was on my way home from Millmont. I had been talking to Delbert Alters, Aaronsburg, who was a friend of mine, and he was going home, so I said I would follow him. I was behind him as we left Hartleton. As we approached the curve he was about 300 yards ahead of me. I was doing around 40 to 50 miles an hour as I started up the hill. I was on my own side of the highway when I noticed a car coming from the opposite direction, come over on my side of the road. I turned to the right to avoid him but was unable to get out of the way' ".

The four questions raised on this appeal, as stated in appellant's brief, may be consolidated into one principal issue, namely, the sufficiency of the evidence. Appellant contends that there was no evidence of any

unlawful or reckless conduct on his part which was the legal cause of death, that the corpus delicti was not established, that the presumption of innocence was not overcome, and that his demurrer to the evidence should have been sustained.

The crime of involuntary manslaughter is proscribed by Section 703 of The Penal Code[1] as follows: "Whoever is convicted of involuntary manslaughter, happening in consequence of an unlawful act, or the doing of a lawful act in an unlawful way, is guilty of a misdemeanor". The offense consists of the killing of another person without malice and unintentionally, but in doing some unlawful act not amounting to a felony, or in negligently doing some lawful act: *Commonwealth v. Piper,* 183 Pa. Superior Ct. 229, 130 A. 2d 195. Where the act in itself is not unlawful, to make it criminal, the negligence must be such a departure from prudent conduct as to evidence a disregard of human life or an indifference to consequences: *Commonwealth v. Holman,* 160 Pa. Superior Ct. 211, 50 A. 2d 720. Reckless driving upon the highway is such a departure from prudent conduct: *Commonwealth v. Carnes,* 165 Pa. Superior Ct. 53, 67 A. 2d 675, as is also participation with the operator of another motor vehicle in a race or speed contest: *Commonwealth v. Levin,* 184 Pa. Superior Ct. 436, 135 A. 2d 764.

In *Commonwealth v. Root,* 403 Pa. 571, 170 A. 2d 310, our Supreme Court pointed out that there are two essential and separate elements in the crime of involuntary manslaughter (a) reckless conduct on the part of the accused, and (b) a direct causal connection between that reckless conduct and the ensuing death. In the instant appeal, unlike the *Root* case, the element of causal connection is not seriously at issue. The argument of appellant's able counsel concerns the suffi-

---

[1] Act of June 24, 1939, P. L. 872, 18 P.S. 4703.

ciency of the evidence as it relates to the first element. Of the two living eyewitnesses, one had no recollection of the collision, and the other chose not to testify. It is therefore true, as argued on appellant's behalf, that the Commonwealth's case was based largely upon circumstantial evidence. However, it is settled law that proof of guilt may be established by circumstantial evidence, provided that the circumstances proved are such as reasonably and naturally justify an inference of guilt, and are of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt: *Commonwealth v. Dalton,* 199 Pa. Superior Ct. 388, 185 A. 2d 653.

When a defendant in a criminal case challenges the sufficiency of the evidence produced to convict him, the appellate court must view the evidence in the light most advantageous to the Commonwealth, in whose favor the jury's verdict resolved all controverted factual questions and the reasonable inferences to be taken from the testimony: *Commonwealth v. Pressel,* 199 Pa. Superior Ct. 16, 184 A. 2d 358. We start with the fact that appellant was operating the Chevrolet automobile at the time of the collision. He admitted this to the police officer. The self-exculpatory portion of appellant's statement was subject to contradiction: *Commonwealth v. Lees,* 199 Pa. Superior Ct. 383, 185 A. 2d 815. While there was no testimony as to appellant's speed or position on the highway at the exact moment of impact, there was such a continuity of observation of the speed and course of travel of his vehicle, covering approximately a mile and up to within a few hundred feet of the collision, that the jury could draw a reasonable inference as to speed and position on the highway at the time of impact.

The testimony of the Commonwealth's witnesses, Hinderer and McClintock, established that, up to a

point 450 feet from the collision, appellant was participating in a race and was operating his vehicle at an unlawful rate of speed. There was no other traffic between the time the cars of appellant and Alters passed these witnesses until the "thud" was heard. This fact was also established by the testimony of the Hackenberg sisters. We are not in accord with appellant's argument that the estimates as to speed should have been excluded. The cases cited in his brief[2] are readily distinguishable. Opinion testimony as to speed, upon proper observation and experience, has consistently been held to be admissible. See *Dugan v. Arthurs*, 230 Pa. 299, 79 A. 626. Testimony as to the speed or operation of an automobile at a point near and a short time before a collision is relevant evidence, and its weight and credibility are for the jury: *Finnerty v. Darby*, 391 Pa. 300, 138 A. 2d 117. A factual situation somewhat similar to that in the case at bar appears in *Commonwealth v. Pennzoil Co.*, 358 Pa. 221, 56 A. 2d 93, wherein a witness observed defendant's truck passing his house 480 feet from the scene of the accident. Our Supreme Court held that "this testimony could not be excluded merely because of the distance".

Appellant also argues that the position of the cars after the collision "is not in itself a circumstance sufficient to warrant the conclusion that defendant was negligent in operation". He quotes at length from the opinion of the lower court in *Satovich v. Lee*, 5 Pa. D. & C. 2d 289; affirmed 385 Pa. 133. That case was discussed and distinguished in *Thomas v. Tomay*, 394 Pa. 299, 147 A. 2d 321. The instant factual situation more

---

[2] *Fitzgerald v. Penn Transit Co.*, 353 Pa. 43, 44 A. 2d 288; *Kelly v. Veneziale*, 348 Pa. 325, 35 A. 2d 67; *Kaercher v. Miller*, 191 Pa. Superior Ct. 416, 156 A. 2d 368; *McCaulif v. Griffith*, 110 Pa. Superior Ct. 522, 168 A. 536; *Sanders v. Stotesbury*, 100 Pa. Superior Ct. 523.

closely resembles that in the case of *Mitchell v. Stolze,* 375 Pa. 296, 100 A. 2d 477, wherein Mr. Justice MUS-MANNO made the following pertinent statement: "Since the geographical physics of the accident indisputably establish that the Mitchell car was travelling eastward-ly and the Stolze car was travelling westwardly, the fact that both cars came to rest on that portion of the road assigned to eastwardly-moving traffic proclaims prima faciedly that the Stolze car was violating the law of the road at the time of the impact". See also *Flowers v. Dolan,* 155 Pa. Superior Ct. 378, 38 A. 2d 429. In the case at bar, the inference that appellant was on the wrong, or south, side of the highway was supported, not only by the position of the cars after the collision, but also by the points of property damage, the tire mark, and the location of the debris.

In summary, we are satisfied that the combined weight and volume of the Commonwealth's evidence in the case at bar fully supports appellant's conviction. Our examination of the record leads us to agree with the conclusion of the court below that the jury was warranted in finding "that the defendant, in the operation of his motor vehicle, was guilty of such reckless-ness of conduct as to bring him within the purview of the essential elements of involuntary manslaughter".

The judgment is affirmed, and it is ordered that ap-pellant appear in the court below at such time as he may be there called, and that he be by that court com-mitted until he has complied with his sentence or any part thereof which had not been performed at the time the order of supersedeas was entered.