Commonwealth *v.* Smoker, Appellant.

Argued June 9, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*John W. Beyer,* with him *Joseph J. Lombardo,* and *Arnold, Bricker, Beyer & Barnes,* for appellant.

*Theodore A. Parker,* Assistant District Attorney, with him *Wilson Bucher,* District Attorney, for Commonwealth, appellee.

OPINION BY FLOOD, J., September 17, 1964:

The defendant was found guilty of involuntary manslaughter and the court below refused his motion to arrest judgment or grant a new trial. Mrs. Pennington was killed as a result of a head-on collision between the car in which she was riding and the car driven by the defendant which had crossed into the wrong lane. The defendant argues that there is no proof that he did an intentional act which constituted a crime; that proof that he was asleep is insufficient to support the conviction in the absence of some negligent conduct inducing sleep; and that the mere presence of his car on the wrong side of the road is not sufficient to sustain the conviction.

These contentions are largely answered by the definition of involuntary manslaughter under Pennsylvania law. The usual definition is set forth in *Commonwealth v. Flax,* 331 Pa. 145, 156, 200 A. 632, 637 (1938), as follows: "[A]ll such killings as result unintentionally and without malice from the commission of unlawful but nonfelonious acts not naturally tending to cause death or great bodily harm, or the negligent performance of acts which are not unlawful per se, or by the negligent omission to perform a legal duty."[1] This definition was reaffirmed by this court

---

[1] Section 703 of The Penal Code of June 24, 1939, P. L. 872, §703 (18 PS §4703), provides: "Whoever is convicted of involun-

in *Commonwealth v. Root,* 191 Pa. Superior Ct. 238, 156 A. 2d 895 (1959). Although this case was reversed on other grounds, *Commonwealth v. Root,* 403 Pa. 571, 170 A. 2d 310 (1961), this definition was in no way modified.

Involuntary manslaughter may thus be based upon the negligent performance of an act not harmful per se or a negligent omission to perform a legal duty. Negligent killing in the course of a failure to obey the law is sufficient under this definition. The trial court went beyond what defendant was entitled to under this definition and charged that the defendant's conduct must be rash or reckless.

While admitting that a specific intent to kill or harm is not required for conviction of this crime, the defendant contends that there must at least be an intent to do what he did. If he means by this that he must have intentionally driven into the wrong lane, this is not the law. It is enough that he intentionally drove his car and recklessly failed to drive it in its proper lane, driving it instead, because of inattention to what he was doing, into the wrong lane. This case in no way resembles the cases which the defendant cites. *Commonwealth v. Koczwara,* 397 Pa. 575, 155 A. 2d 825 (1959), was a case involving vicarious liability. *Commonwealth v. Unkrich,* 142 Pa. Superior Ct. 591, 16 A. 2d 737 (1940), involved an act made unlawful only by a fact which the defendant did not know and could not be expected to know.

Of course, the burden was upon the Commonwealth to prove his guilt beyond a reasonable doubt, but under the evidence the jury was warranted in finding that it did so. The mere fact that he drove on the wrong side of the road, without any visible reason or

---

tary manslaughter, happening in consequence of an unlawful act, or the doing of a lawful act in an unlawful way, is guilty of a misdemeanor . . ."

compulsion to do so, would warrant the jury in inferring that he did so negligently and, particularly in view of the great danger involved in such conduct under the circumstances, that he did so recklessly. Nothing appeared in the evidence to show that he was forced off the road, that he was faced with a sudden emergency or that any other fact existed which might have relieved him of responsibility.

The defendant had no burden to exculpate himself but if the circumstances proved by the Commonwealth give rise to an inference of his guilt which the jury accepts and he fails to offer anything to destroy that inference, or raise a reasonable doubt about it in the jury's mind, he has no ground of complaint.

The defendant claims that if he fell asleep he could not be found guilty in the absence of some negligent conduct which induced the sleep. However, the defendant testified that he had been awake since about 6 A.M., working fourteen hours in the interval. The jury could have found his conduct reckless in driving after 10 P.M. that day under the circumstances, particularly since on cross-examination he indicated that he had only seven hours sleep in the preceding forty hours. They could have properly inferred from this that his falling asleep and the resulting tragedy were a product of this recklessness.

The defendant did not testify at the trial that he was asleep at the time of the accident. Two witnesses testified for the Commonwealth that shortly after the accident the defendant said he "apparently fell asleep" or "I guess I fell asleep". The defendant, in his cross-examination, said that he thinks he told the policeman he probably dozed. These statements, even if the jury believed that he made them, did not prove that he was asleep, and it would not be surprising that the jury did not accept them as true in view of his failure to testify that he was asleep, and his testimony on the

contrary, that he felt fine and did not feel any drowsiness.

The charge on this point, of which complaint is made, is as follows: "Mr. Smoker said that he felt fine, no ailments, no drowsiness, no sickness of any kind. He wasn't sure, or at least he didn't appear to be positive as to what he said to the trooper, but he thinks he said he probably dozed . . . There is an intimation that he might have been asleep, but that isn't what he tells us. That is the reason or the excuse for being on that side of the highway the trooper said that Mr. Smoker gave him at the time this collision occurred, but here in the court room from the witness stand, Mr. Smoker doesn't tell us why he was on the wrong side of the highway and you will have to determine whether or not he was doing a rash and reckless act when this death occurred. If he was, then you would be justified in finding him guilty of this offense of involuntary manslaughter." This was not error.

The defendant orally requested the court to charge that if the defendant "crossed into the south lane when he was not conscious then that, being the south lane [sic], could not be such an act that would support a conviction of the present charge." This, of course, is not an accurate and full statement of the law, since if his driving while unconscious was itself a result of his negligence or recklessness he could be found guilty. The refusal to charge does not constitute reversible error, especially when the entire charge is considered.

After the jury had retired they submitted the following question and received the following answer from the court:

"QUESTION: 'Is an individual considered negligent for falling asleep while driving?'

"ANSWER: 'Members of the jury, in answer to your question falling asleep while operating a motor vehicle

on a public highway is evidence which may be considered negligence. You are reminded that the negligence which is sufficient to convict this defendant must be rash and reckless conduct.' "

Again we find no error, in view of the qualification as to rash and reckless conduct.

The court refused the following point for charge: "If you find that the direct cause of the death in this case was the fact that the defendant fell asleep while driving, you must find some additional improper conduct of the defendant to help cause that sleepiness before you can convict the defendant of this charge." The trial judge's repeated statement in his charge, every time sleep was mentioned, that the defendant's conduct must be rash or reckless, and his careful avoidance of any statement that sleep alone was sufficient to convict, made harmless the refusal to charge as requested.

There is no error in charging that "rash or reckless" conduct is sufficient to convict. *Commonwealth v. Gill,* 120 Pa. Superior Ct. 22, 182 A. 103 (1935). Actually we see no substantial difference in the meaning of the two words in this context. See "Recklessness", Black's Law Dictionary, 4th Ed., p. 1435.

The defendant's real complaint seems to be that there was no evidence of fault on his part, and that the court placed upon him the burden of establishing that he was without fault. This is not so. The court in discussing every phase of the defendant's conduct emphasized that it must be found rash or reckless to convict him. The evidence was ample for an inference of recklessness to be drawn. It might well have been drawn if the defendant had offered no testimony. The burden was not placed upon him to prove his innocence. If he attempted to do so and failed he was convicted, not because he failed to prove his innocence, but because the jury found him guilty upon evidence

presented by the Commonwealth which warranted an inference of reckless and criminal conduct.

The court did not charge that the unexplained presence of the car on the wrong side of the road was sufficient to convict. The actual language of the trial judge was: "As we all know, the law requires the operators of motor vehicles to drive on their own right side of the highway, and it is unlawful to drive on the left side except to pass or except where it can be done in safety, or where it is a necessity. Mr. Smoker does not tell us that someone forced him across the highway into the path of Mr. Pennington. He doesn't offer any explanation as to why he was there. The operator of every motor vehicle on our highway is charged with the constant duty of keeping his car under such control that he can avoid or prevent injury to other people on the highway. Was Mr. Smoker at the time of this collision operating his car in a proper, careful manner under full control that he could avoid injury to others, or was his conduct rash and reckless in being on the wrong side of the highway and crashing head on into the Pennington car?" There is no error in this. Cf. *Commonwealth v. Flax,* supra, *Commonwealth v. Root,* supra.

Defendant finally complains that the court erred in excluding evidence that three days before the trial a defective resonator was discovered in the car which the defendant was driving at the time of the accident, and that this defect would have permitted the escape of carbon monoxide into the car. We cannot say that the trial judge was in error in excluding this evidence. No attempt was made to show that the defect existed at the time of the accident, over two months earlier, or to show that nothing had happened in the collision or in the interim to cause this defect. Moreover, nothing in the testimony indicates that the defendant was

suffering from or affected by carbon monoxide poisoning at the time of the tragic accident.

Judgment affirmed.