Commonwealth *v.* Morris, Appellant.

Argued December 15, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Joseph F. Keener,* with him *Henderson, Wetherill & O'Hey,* for appellant.

*George W. Tracy,* Assistant District Attorney, with him *Richard A. Devlin,* Assistant District Attorney, and *Richard S. Lowe,* District Attorney, for Commonwealth, appellee.

OPINION BY WRIGHT, J., March 18, 1965:

On the late afternoon of October 31, 1963, in the eastbound lanes of the Pennsylvania Turnpike in Montgomery County, 125 feet east of mile post marker 335.5, there was a collision involving motor vehicles operated respectively by Max Morris, John J. Shannon and Francis J. Martinelli. Immediately after the collision Martinelli was taken to a hospital in Norristown where he was pronounced dead on arrival. At No. 121 November Term 1963, in the Court of Quarter Sessions of Montgomery County, the grand jury returned a bill of indictment against Morris charging involuntary

manslaughter. On April 10, 1964, Morris appeared with counsel before Honorable ROBERT W. HONEYMAN, entered a plea of not guilty, and waived his right to jury trial. After the testimony was heard, Morris was adjudged guilty. Motions for a new trial and in arrest of judgment were refused by the court en banc, and sentence was imposed. This appeal followed. A summary of the testimony adduced at the trial appears in the following excerpt from the opinion below:

"The Commonwealth introduced the testimony of three Pennsylvania State Officers for the purpose of describing the position of the respective vehicles after the accident, and the damage incurred by each. There were slight discrepancies in this testimony, but it was uncontroverted that, after the accident, defendant's Buick was off the traveled portion of the highway into the medial strip, facing across the highway. The damage done to this automobile was limited to the left front door, with a few small marks on the rear thereof. The Shannon Ford was also in the medial strip with its right front in contact with the left of defendant's car. The right rear of the Shannon car was considerably damaged. The entire front of the Martinelli Volkswagen was severely damaged.

"The accident occurred on a bridge at a point where there were no berms to prevent a crossover to the west bound lanes. The weather conditions were adverse. It was misty and the road surface was wet. The accident occurred at approximately 5:05 P.M. at which time it was beginning to get dark.

"John J. Shannon testified that he was operating his Ford automobile in an easterly direction on the Pennsylvania Turnpike when, 150 to 200 feet in front of him, he noticed defendant's Buick parked in the right hand lane of the aforementioned bridge. Shannon then moved to the left lane to pass defendant's parked car, but when approximately 50 feet therefrom,

the Buick made a fast, darting U-turn in front of his automobile. Shannon stated that defendant's Buick was at a right angle to his Ford, going across the Turnpike, when the vehicles collided. After Shannon collided with the left front of defendant's car, he felt an impact from the rear.

"David R. Pease, a passenger in the Martinelli automobile, testified that the decedent was operating his Volkswagen in the left hand lane of the eastbound traffic lanes of the Pennsylvania Turnpike, when the Shannon Ford moved from the right lane to the left lane in front of them. At this point he saw defendant's Buick sideways on the Turnpike in front of them, proceeding to the left, making a U-turn. Pease saw the Shannon Ford collide with defendant's Buick. The Martinelli automobile then struck the right rear of the Shannon Ford. This testimony was fully supported by Dennis M. Walsh, the second passenger in the Martinelli car.

"The events surrounding this accident were also witnessed by James R. Ausman, who was operating his vehicle behind the Martinelli car. Ausman, a completely disinterested witness, testified that he saw defendant's Buick going from right to left across the eastbound turnpike lanes, at which time the Shannon car went into the medial strip to avoid the collision but the Ford struck the left front of the Buick, and the Volkswagen struck the rear of the Ford. Ausman, who managed to avoid the accident, further testified that at the point of impact, defendant's Buick was close to being perpendicular to the eastbound lanes.

"The defendant offered the testimony of his passenger, Esther A. Phillips, who stated that both she and the defendant were from Toronto, Canada, and had been traveling for ten hours on the day of the accident. Mrs. Phillips stated that defendant was operating his Buick in the right hand lane at 45 to 50

mph when she looked through the rear window and saw the Martinelli vehicle approaching at twice this rate of speed. There was then a terrible crash, as the Volkswagen struck the rear of the defendant's car. This was followed by a second impact from the left. The defendant testified that he had no memory of the accident, but that he did not stop, or make a U-turn on the Turnpike as alleged".

Appellant first contends that the Commonwealth's evidence "is not sufficient to sustain the conviction of involuntary manslaughter". As we pointed out in *Commonwealth v. Butts*, 204 Pa. Superior Ct. 302, 204 A. 2d 481, the test of the sufficiency of the evidence is whether, accepting as true all of the evidence upon which a verdict could properly have been based, it is sufficient to prove beyond a reasonable doubt that the defendant is guilty of the crime charged. Having carefully reviewed this record, we have no doubt whatever that the evidence produced by the Commonwealth in the instant case passes the required test. It was within the province of the trial judge to assess credibility, and to accept or reject the testimony of any witness: *Commonwealth v. Kirkland*, 413 Pa. 48, 195 A. 2d 338. In the words of Judge HONEYMAN: "The facts are inescapable that this accident could not have happened as contended by the defendant's witness. Further, there is nothing by way of a defense that creates any reasonable doubt that defendant attempted to make a U-turn". This action was such a departure from prudent conduct as to evidence a disregard of human life or an indifference to consequences. Cf. *Commonwealth v. Hartle*, 200 Pa. Superior Ct. 318, 188 A. 2d 798; *Commonwealth v. Gillum*, 202 Pa. Superior Ct. 370, 195 A. 2d 868; *Commonwealth v. Smoker*, 204 Pa. Superior Ct. 265, 203 A. 2d 358.

Appellant further contends that the conduct of the defendant "was not the direct cause of Martinelli's

death". He cites the case of *Commonwealth v. Root,*
403 Pa. 571, 170 A. 2d 310, which stands for the propo-
sition that there are two essential and separate ele-
ments in the crime of involuntary manslaughter (a)
reckless conduct on the part of the accused, and (b) a
direct causal connection between that reckless conduct
and the ensuing death. In the instant appeal, unlike
the *Root* case, a direct causal connection clearly ap-
pears. We are not impressed by the argument that
Martinelli could have avoided the collision by follow-
ing the same course as the witness Ausman, and that
his death came about because he "was either follow-
ing too closely behind the Shannon vehicle or was
driving too fast for conditions". Appellant may not
thus escape responsibility for the result of the sudden
emergency created by his own criminal negligence.

Appellant's remaining contention is that there was
"no competent proof of the cause of death". Warren
R. Zieggenfus, a June 1963 graduate of Temple Uni-
versity Medical School, was on duty at the hospital
as an interne. He testified that Martinelli was dead
on arrival, and expressed the opinion that death re-
sulted from a crushed chest. Appellant argues that
Zieggenfus was not yet licensed to practice medicine,
citing the Act of June 3, 1911, P. L. 639, Section 2, 63
P.S. 401-A, which proscribes the unlawful practice of
medicine. We perceive no merit in this argument. In
*Clark v. Horowitz,* 293 Pa. 441, 143 A. 131, our Su-
preme Court approved the admission of the testimony
of a hospital interne, making the following observa-
tion which is here pertinent: "In this case the witness
had the advantage of a medical college education and
important clinical experience in a noted medical insti-
tution. His testimony was based on his own observa-
tion, his opinions were his own and the value of his
testimony was a matter for the determination of the
jury". This case, together with cases from other juris-

dictions, is cited at Section 569 of Wigmore on Evidence, Third Edition, as authority for the following statement by the text writer: "The common law, it may be added, does not require that an expert witness on a medical subject shall be a person duly licensed to practice medicine".

In the case at bar, Officer Greening testified as follows: "Q. Now, you indicated that you assisted in the removal of the deceased from the Volkswagen. Did you administer any first aid to the decedent while they were working on the car? A. He was making unusual noises at the time. His neck apparently was broken. I assume that—we couldn't get the doctor there in time to administer anything to him, and from the amount of accidents I have investigated, I assume that there wasn't any first aid that I could offer him, other than to get him out of the vehicle as quickly as I could and get him to the hospital. Q. Did you take the deceased's pulse at any time during the course of the— A. Yes, I did. I felt his wrist, and I could not obtain a pulse beat". There can be no question whatever that Martinelli received fatal injuries in the collision. It is our view that, under the circumstances disclosed by this record, the court below did not err in permitting the hospital interne to testify as to the cause of death.

Judgment affirmed.