Commonwealth, Appellant, *v.* Farrell.

Argued June 14, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, and SPAULDING, JJ. (JACOBS and HOFFMAN, JJ., absent).

*Milton O. Moss,* First Assistant District Attorney, with him *Richard A. Devlin,* Assistant District Attorney, and *Richard S. Lowe,* District Attorney, for Commonwealth, appellant.

*James S. Kilpatrick, Jr.,* with him *Thomas J. Burke,* and *Haws and Burke,* for appellee.

OPINION BY WRIGHT, J., September 15, 1966:

On June 17, 1965, just before eleven o'clock p.m., at the intersection of DeKalb Pike and Johnson Highway near Norristown Borough, there was a collision involving a tractor-trailer operated by Leonard Farrell and a Falcon sedan operated by Michael Tornetta. One of the passengers in the Falcon sedan, John F. Barnett, Jr., received fatal injuries as a result of the collision.

Farrell was indicted by the Montgomery County Grand Jury on a charge of involuntary manslaughter, Bill No. 1657 of 1965. He entered a plea of not guilty, and the case proceeded to trial before Judge GROSHENS and a jury. At the conclusion of the Commonwealth's testimony, counsel for Farrell filed a demurrer to the evidence. After extended argument, the trial judge entered an order sustaining the demurrer. This appeal by the Commonwealth followed.

The test to be applied to the validity of a demurrer is whether the evidence produced and inferences reasonably drawn therefrom would support a verdict of guilt: *Commonwealth v. Fisher,* 189 Pa. Superior Ct. 8, 149 A. 2d 670; affirmed 398 Pa. 172, 157 A. 2d 214. See also *Commonwealth v. McDade,* 197 Pa. Superior Ct. 522, 180 A. 2d 86. The sole question presented by this appeal therefore is whether the evidence adduced by the Commonwealth was sufficient to have the case submitted to the jury. It is our view that a recital of the factual situation revealed by an examination of the instant record will clearly demonstrate that this question must be answered in the affirmative.

DeKalb Pike, Route 202, runs generally from north to south, and accommodates two-way traffic as far south as Johnson Highway. It then changes to a one-way street, accommodating only northbound traffic, and is prominently so marked. Johnson Highway is a two-way street running generally from west to east. As they approach each other, both DeKalb Pike and Johnson Highway are posted with thirty-five mile speed limit signs. At their intersection Johnson Highway has three traffic lanes, one for traffic proceeding west and two for traffic proceeding east. The middle lane is used by traffic making a left turn to go north on DeKalb Pike. The curb or southern-most lane is used by traffic crossing DeKalb Pike and proceeding east. The intersection is controlled by four traffic

lights which operate on cycles, twenty-seven seconds green, three seconds amber, and thirty seconds red.

Farrell was employed as a truck driver by Morelli Brothers in Malvern, Pennsylvania. At eight o'clock a.m. on the morning of June 17, 1965, he left Malvern to get a load of coal in Ashley, Pennsylvania. He was operating a Mack diesel tractor sixteen feet in length, pulling a thirty-foot trailer. He arrived in Ashley about two o'clock p.m. and left there about six o'clock p.m. with a load of coal weighing 37,000 pounds. He was preceded by Sherman Hayward, another driver for Morrelli Brothers, operating a similar rig. Their route led south on the Turnpike Extension to the Lansdale Exit, down Route 63 to Route 202, then south on Route 202. Both drivers were thoroughly familiar with the intersection here involved. Hayward testified as follows: "As all trucks do, you brake your speed down knowing that is a bad curve. You always brake the speed down to get around there".

The Falcon sedan was being operated from west to east on Johnson Highway. Immediately prior to the collision the light was red for traffic on Johnson Highway and green for traffic on DeKalb Pike. Tornetta was operating the Falcon sedan in the curb lane and stopped for the light. Hayward successfully negotiated the right turn from DeKalb Pike into Johnson Highway. The light then changed to amber. Farrell attempted to follow Hayward but did not succeed in negotiating the turn. He came entirely across Johnson Highway striking the Falcon sedan and driving it into a field at the southwest corner of the intersection. His rig came to rest atop the Falcon sedan at a point thirty-five and one-half feet west of the west curb line of DeKalb Pike. Farrell told the investigating detective, who arrived at the scene within minutes after the collision: "I was in his lane. I wasn't supposed to

be there". His attempted explanation is set forth in the footnote.[1]

The self-exculpatory part of Farrell's explanation was of course subject to contradiction: *Commonwealth v. Hartle*, 200 Pa. Superior Ct. 318, 188 A. 2d 798. Police investigation did not reveal the presence of a car in the middle lane of Johnson Highway. Other passengers in the Falcon sedan testified that there was no traffic on Johnson Highway west of DeKalb Pike except the Hayward rig. This fact was confirmed by a disinterested witness, Thomas Nacarella, the operator of a vehicle proceeding west on Johnson Highway east of the intersection. The light was red for Nacarella. After the first truck got through, the light turned to green. Nacarella testified as follows: "Q. What did you see the truck do? A. It come down south on 202. I was making the turn on Johnson Highway. He made a wide turn there and jumped the curb . . . Q. Did you see any automobiles in front of or cross in front of the truck prior to its entering the intersection? A. No".

The applicable legal principles have been frequently stated, and need not be here repeated at length. The crime of involuntary manslaughter is proscribed by Section 703 of The Penal Code as follows: "Whoever is convicted of involuntary manslaughter, happening in consequence of an unlawful act, or the doing of a lawful act in an unlawful way, is guilty of a misdemeanor". Act of June 24, 1939, P. L. 872, 18 P.S.

---

[1] "Q. Did you make a right turn at this traffic signal? A. I started to, but when I was in the swing the traffic light turned amber and there were two cars coming towards me, one car was in the middle lane and the other was in the inside lane, the car in the middle lane going east went around the right front of my tractor, when I was in the swing of making my right turn I saw what was happening, so I then swung my truck to the left so I wouldn't hit this car that was in the middle lane".

4703. The appellee cites *Commonwealth v. Gill,* 120 Pa. Superior Ct. 22, 182 A. 103, and *Commonwealth v. Samson,* 130 Pa. Superior Ct. 65, 196 A. 564, for the principle that the ingredient of recklessness must be present. There can be no quarrel with this proposition. As we stated in *Commonwealth v. Hartle,* supra, 200 Pa. Superior Ct. 318, 188 A. 2d 798: "The offense consists of the killing of another person without malice and unintentionally, but in doing some unlawful act not amounting to a felony, or in negligently doing some lawful act . . . Where the act in itself is not unlawful, to make it criminal, the negligence must be such a departure from prudent conduct as to evidence a disregard of human life or an indifference to consequences . . . Reckless driving upon the highway is such a departure from prudent conduct".

As defined in The Vehicle Code,[2] reckless driving includes the operation of a motor vehicle in careless disregard of the rights or safety of others or in a manner so as to endanger any person or property. In *Commonwealth v. Smoker,* 204 Pa. Superior Ct. 265, 203 A. 2d 358, we held that the operation of a motor vehicle in the wrong traffic lane, without any visible reason or compulsion to do so, supported an inference that the operator was driving recklessly. In that case the late Judge Flood made the following statement here pertinent: "While admitting that a specific intent to kill or harm is not required for conviction of this crime, the defendant contends that there must at least be an intent to do what he did. If he means by this that he must have intentionally driven into the wrong lane, this is not the law. It is enough that he intentionally drove his car and recklessly failed to drive it in its proper lane, driving it instead, because of inattention to what he was doing, into the wrong lane . . . The

---

[2] Act of April 29, 1959, P. L. 58, Section 1001, 75 P.S. 1001.

mere fact that he drove on the wrong side of the road, without any visible reason or compulsion to do so, would warrant the jury in inferring that he did so negligently and, particularly in view of the great danger involved in such conduct under the circumstances, that he did so recklessly".

In summary, we are firmly of the opinion, as initially indicated, that the evidence adduced by the Commonwealth in the case at bar was sufficient, both in quantity and quality, to establish beyond a reasonable doubt that Farrell was guilty of the crime with which he was charged. Cf. *Commonwealth v. Gillum*, 202 Pa. Superior Ct. 370, 195 A. 2d 868; *Commonwealth v. Butts*, 204 Pa. Superior Ct. 302, 204 A. 2d 481; *Commonwealth v. Morris*, 205 Pa. Superior Ct. 105, 207 A. 2d 921. The credibility and effect of Farrell's explanation that he was confronted with a sudden emergency will be matters for the jury to determine.

The order sustaining the demurrer to the evidence is reversed with a procedendo.