Opinion by
 

 Hoffman, J.,
 

 The defendant, Curtis E. Clowser, was indicted and’ convicted of involuntary manslaughter on March 4, 1966. He was sentenced to probation for a period of three years and a fine in the amount of |500.00.
 

 The above conviction resulted from the death of James Roberts in an automobile accident. This death occurred on December 14, 1963, at approximately 11:30 p.m., at the intersection of Routes 10 and 30 in Chester County, Pennsylvania. The decedent was operating his vehicle in the northern-most westbound lane of Route 30, a four lane divided highway running east and west. Defendant was operating his vehicle in a northerly direction on Route 10, a two-lane highway running north and south. Defendant was accompanied by his wife, who was killed in the collision, and his four children, all of whom sustained varying degrees of injuries. The intersection of Routes 10 and 30 was controlled by a “Stop” sign for Route 10, thereby making Route 30 a through highway.
 

 
 *210
 
 The point of impact occurred in the northernmost lane of the two westbound lanes of Route 30. Route 30 is 92 feet in width at this point and approximately 150 feet from the stop sign on Route 10. Thus, defendant had crossed about seven-eighths of Route 30 before he was struck by the decedent’s vehicle.
 

 The lower court, sitting without a jury, found that defendant failed to yield the right of way as required by The Vehicle Code, Act of April 29, 1959, P. L. 58, §1016(a), 75 P.S. 1016(a). The lower court further found that a violation of this provision of The Vehicle Code is the doing of an unlawful act, and that defendant’s conduct was the “legal cause” of Robert’s death. It found, therefore, defendant guilty of involuntary manslaughter under the definition in
 
 Commonwealth v.
 
 Root, 403 Pa. 571, 170 A. 2d 310 (1961). That case stated: “Involuntary manslaughter consists in ‘the killing of another without malice and unintentionally, but [1] in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, . . .’ ” Concurring opinion by Bell, C. J.
 

 The court below specifically noted in its opinion that “We need not go further to determine whether that conduct was rash or reckless or grossly negligent since that type of conduct is only necessary for a conviction in those cases dealing with deaths resulting from negligent conduct on the part of the defendant; it is not necessary where the conduct is unlawful such as that with which we are now dealing.”
 

 The principal question before us is whether a violation of the above provision of The Vehicle Code, without a finding of wanton or reckless conduct, is, per se,. sufficient to sustain a conviction of involuntary manslaughter.
 

 Our research has disclosed that our Courts have put increasing emphasis upon rashness and recklessness as a requisite for a conviction of involuntary manslaugh
 
 *211
 
 ter by automobile. In
 
 Commonwealth v. Hartle,
 
 200 Pa. Superior Ct. 318, 188 A. 2d 798 (1963), our Court stated that: “In Commonwealth v. Root, 403 Pa. 571, 170 A. 2d 310, our Supreme Court pointed out that there are two essential and separate elements in the crime of involuntary manslaughter (a)
 
 reclcless conduct
 
 on the part of the accused, and (b) a direct causal connection between that
 
 reclcless conduct
 
 and the ensuing death.” at 324. [Emphasis added] In
 
 Commonwealth v. Smoker,
 
 204 Pa. Superior Ct. 265, 203 A. 2d 358 (1964), we stated that: “Involuntary manslaughter may thus be based upon the
 
 negligent
 
 performance of an act not harmful per se or a
 
 negligent
 
 omission to perform a legal duty.
 
 Negligent hilling
 
 in the course of a failure to obey the law is sufficient under this definition.” at 268. [Emphasis added]
 

 A review of the numerous cases involving convictions for involuntary manslaughter by automobile bears out the fact- that some degree of culpable behavior or reckless disregard for the safety of others is required to sustain a conviction. For example, in
 
 Commonwealth v. Williams,
 
 133 Pa. Superior Ct. 104, 1 A. 2d 812 (1938), the defendant was a duly licenced driver for several years, but failed to renew his license in 1936. At the time of the accident which resulted in a death, he had no license. The. Court held that the operation of a motor vehicle without a license, although in violation of The Vehicle Code, was not an act sufficient, as a matter of law, to render the driver guilty of involuntary manslaughter.
 
 [1]
 
 The Court emphasized that the defendant had been absolved of any
 
 *212
 
 negligent conduct, and thus, interpreted this as evidence that defendant’s conduct was not the legal cause of the accident. Our Court further supported this approach by quoting favorably from
 
 State v.
 
 Nichols, 34 N.M. 639, 288 P. 407 (1930). “It would ... be ridiculous to say that any accidental killing resulting indirectly or remotely while committing an unlawful act is involuntary manslaughter. Our statutes make it unlawful for a person to drive an automobile without a red tail-light or without first having obtained a license. If, while committing such an unlawful act alone, a person is accidentally and unavoidably run over and killed, the unlawful act could have no bearing whatsoever upon the killing. Would any one contend that the driver be guilty of involuntary manslaughter?” In other words, even though the death would not have occurred but for the defendant’s operation of the car, there must be evidence of some negligence in order for such conduct to be the legal cause of the accident.
 

 More recent cases have embedded this interpretation of involuntary manslaughter in our law where highway deaths are involved. In
 
 Commonwealth v.
 
 Root, supra, the court carefully noted the defendant and the decedent were recklessly racing at high speeds on a two lane highway, but found, on other grounds, that the defendant’s conduct was not the legal cause of the death. See also
 
 Commonwealth v.
 
 Hartle, supra. (Evidence of drag racing at excessive speeds.) In
 
 Commonwealth v. Smoker,
 
 supra, the defendant’s conduct was considered heedless in that he had little sleep, and, yet, knowingly had driven his car. Testimony given at trial indicated that the collision resulted when the defendant dozed off, crossed lanes, and hit the decedent’s car.
 
 Commonwealth v. Morris,
 
 205 Pa. Superior Ct. 105, 207 A. 2d 921 (1965), presented a
 
 *213
 
 case where the defendant negligently made a U-turn on the Pennsylvania Turnpike. Our Court stated that, “This action was such a departure from prudent conduct as to evidence a disregard of human life or an indifference to consequences.” at 109. In
 
 Commonwealth v. Humphrey,
 
 14 Law. L. J. 145 (1955), the court stated: “We are of the opinion that a mere failure to yield the right of way is not such evidence of culpable or criminal negligence as will support the charge of involuntary manslaughter.”
 

 The idew that not every violation of the law or unlawful act in the operation of a motor vehicle will render the operator criminally liable for a death caused thereby comports with the approach followed in other states.
 
 [2]
 
 The violation of a vehicle code in these states is only evidence tending to prove criminal negligence, but does not constitute manslaughter per se.
 
 [3]
 
 In order for the conduct to be denominated as the legal cause of the death, “. . . the ‘unlawful act,’ that is, the infraction, must be done in such a manner as to more than constitute a mere thoughtless omission or slight deviation from the norm of prudent conduct. It must be reckless or in marked disregard for the safety of
 
 *214
 
 others.”
 
 State v. Lingman,
 
 97 Utah 180, 197, 91 P. 2d 457, 465 (1939); 41 Neb. L. R., supra at 799
 
 [4]
 

 The gist of this approach is that the driver’s conduct must be reckless, careless, or wanton before he may be convicted of involuntary manslaughter by automobile. Were we to hold otherwise, the Commonwealth might obtain a conviction for manslaughter based upon a violation of a regulatory statute, where the conduct involved might not support a civil suit.
 

 In applying this rule of law to the facts of the present case, it was error for the lower court to find a violation of The Vehicle Code, without any showing of recklessness or carelessness in the defendant’s conduct. See
 
 Commonwealth v. Smoker,
 
 supra;
 
 Commonwealth v. Hartle,
 
 supra. Moreover, from a careful scrutiny of the record, it does not appear that defendant’s conduct comes within the degree of recklessness required for a conviction of involuntary manslaughter. Defendant testified that he stopped at the Stop sign and once at the intersection of Route 10 and 30 before proceeding onto the highway. He also testified that he saw no one approaching and crossed the road at approximately five miles per hour. This is not refuted anywhere in the record. Furthermore, he had traversed all four lanes of the through highway before the collision, and one of the Commonwealth’s witnesses testified that he did not see decedent’s brake lights go on before the collision. No skid marks were found from decedent’s car which indicates the decedent made no attempt to stop even though he could see the full four lanes at the intersection. Although
 
 *215
 
 decedent’s contributory negligence is no defense to a criminal action, the above factors diminish defendant’s responsibility as the legal cause of the accident and preclude us from calling his conduct reckless, wanton or careless.
 

 For the reasons stated above, the evidence was insufficient to support a conviction of involuntary manslaughter, and, consequently, defendant’s motion in arrest of judgment is hereby granted. The defendant is, therefore, discharged.
 

 [1]
 

 “In our opinion, the language of the above cited statutes and cases implies more than that the unlawful act should be a remote unit in a sequence of events culminating in a fatality, and requires such act to be something more than a factor which might be denominated more properly as an attendant condition than a cause of the death.” at p. 108.
 

 [2]
 

 E.g.,
 
 People v. Lynn,
 
 385 Ill. 165, 52 N.E. 2d 166 (1943) ;
 
 Richardson v. Commonwealth,
 
 192 Va. 55, 63 S.E. 2d 731 (1951) ; Michie, Automobiles §298 C (1947) ; “The Fallacy and Fortuity of Motor Vehicle Homicide,” 41 Neb. L. R. 793 (1962) ; but cf.
 
 State v. Kotapish,
 
 171 Ohio St. 349, 171 N.E. 2d 505 (1960). Several states have passed specific motor vehicle homicide statutes to deal with deaths by automobile. Most of these statutes require more than ordinary negligence to sustain .a conviction for manslaughter. See, e.g., 25 Mich. Stat. Ann. §28.557, as amended (1965).
 

 [3]
 

 In
 
 Porter v. State,
 
 88 S. 2d 924 (Fla. 1956), it had been .proven that a death had resulted from defendant’s failure to stop at a stop street. Nevertheless, the court reasoned that no violation of a regulatory provision of the vehicle code could constitute manslaughter per se without other evidence proving that defendant was culpably negligent.
 

 [4]
 

 The Utah Supreme Court further stated: “There are many other rules for driving mentioned in Title 57 [The Vehicle Code], the infraction of which may constitute a misdemeanor, but not all of which would constitute the basis for a conviction for manslaughter if death should result from the infraction.”