## Commonwealth v. Currie

506

*Joseph Nelson,* District Attorney, and *Robert Bank,* Assistant District Attorney, for Commonwealth.

*Timothy McNickle,* for defendant.

ACKER, J., September 1, 1971.—Defendant's motions for new trial and in arrest of judgment present constitutional questions of considerable import. The basic proposition is that because defendant pled guilty before a justice of the peace and paid a $10 fine and the costs to a charge of driving left of center, he could not be subsequently tried for involuntary manslaughter in the killing of a young man and woman as a result of an automobile accident. Defendant has preserved his position by an oral motion that he be discharged, presented out of the hearing of the jury immediately prior to the charge of the court. This motion was denied. By defendant's motion for new trial and motion in arrest of judgment, the matter was again presented on the basis of "double jeopardy." Therefore, the matter is squarely and properly before this court for determination.

A brief summary of the facts will set the background. Defendant and his friend, Donald Justice, commenced drinking during the afternoon of January 24, 1970,

and intermittently through the day and night. They drank from either whiskey bottles or water glasses of whiskey. They frequented several bars and taverns in the City of Farrell. Defendant, Currie, had worked the night before and had no sleep during the course of the day. He had asked and received permission from Mr. Justice to sleep at his home on the couch that night. They were traveling to the Justice home when the accident occurred. As defendant's vehicle was proceeding eastwardly on what is known as Swamp Road, the vehicle crossed the center line and struck the Triumph automobile of the victims, killing both. The prime defense before the jury was that defendant, Currie, was not the driver, but rather his companion, Justice. Currie claimed that after he left the last bar or tavern, he went to his car, put the key into the ignition, fell asleep in the front seat and remembered nothing until he awakened the next day in the hospital. His hypothesis was that Justice drove and, after the accident, pushed him back under the steering wheel where he was found after the accident. Currie was an extremely large and heavy man. As a result of the accident his companion, Justice, received severe facial injuries, including a fracture of the bones supporting the left eye and a rather severe fracture of the left ankle or leg. The jury failed to believe defendant's contention.

Defendant has been tried twice for both deaths with resulting convictions for involuntary manslaughter in both cases. The first verdict was set aside at the request of defendant by this court and a new trial ordered for reasons of no present concern. At the first trial, however, the court suppressed evidence of an adverse sobriety test of defendant and the Commonwealth did not proceed upon the charge of driving while intoxicated.

Defendant, however, did, in effect, plead guilty to driving left of center before a justice of the peace at a time when he had counsel, but not present with him, by paying a $10 fine and costs. A motion to suppress the guilty plea was made immediately prior to the second trial. The district attorney agreed to limit the testimony of the guilty plea of driving left of center to rebuttal evidence by use of Harris v. State of New York, decided February 24, 1971, 401 U.S. 222. This court sustained defendant's contention based on Coleman v. Alabama, 399 U.S. 1, 90 S. Ct. 1999 (1970), and suppressed all evidence of defendant paying a fine and costs for his failure to drive to the right of center. Therefore, that evidence was never received by the jury. The accident itself occurred at about 12:15 a.m. on January 25th without any actual eye witness other than Mr. Justice. The Commonwealth established its case in large part through circumstantial evidence. Even suppressing much of the Commonwealth's testimony, the evidence produced was more than sufficient to warrant the convictions of involuntary manslaughter at the second trial as well as the first.

I. *Did the payment of a fine and costs by defendant for failing to drive right of center prevent the Commonwealth from prosecuting defendant for involuntary manslaughter?*

Prior to April 6, 1970, when the United States Supreme Court decided Waller v. Florida, 90 S. Ct. 1184, 397 U.S. 387, and Ashe v. Swenson, 90 S. Ct. 1189, 397 U.S. 436, defendant's contention would be without merit. A short answer would be that an acquittal or a conviction of a minor offense included in a greater offense will not bar prosecution for the later offense if the court in which acquittal or conviction was had was without jurisdiction to try the accused for the greater

offense: Commonwealth v. Bergen, 134 Pa. Superior Ct. 62, 4 A. 2d 164 (1939).[1]

By analogy in cases of homicide, if involuntary manslaughter is not included, a defendant may be subsequently convicted for involuntary manslaughter: United States ex rel. Reid v. Brierley, 296 F. Supp. 294 (1969); Hilands v. Commonwealth, 114 Pa. 372, 6 Atl. 267 (1886); Commonwealth v. Greevy, 271 Pa. 95, 114 Atl. 511 (1921). Similarly, an acquittal of murder is not deemed to be an acquittal of other offenses which cannot be tried at the same time, such as assault and battery and aggravated assault and battery: Commonwealth v. Comber, 374 Pa. 570, 97 A. 2d 343, 37 ALR 2d 1058 (1953). However, in that same case it was decided that in a prosecution for involuntary manslaughter under an indictment that the victim struck his head as a result of defendant's attacks, an acquittal of involuntary manslaughter was also deemed an acquittal of assault and battery and a plea of autrefois acquit should be sustained.[2]

---

[1] In People v. Townsen, 183 N. W. 177 (1921), being somewhat similar on its facts, a defendant was first convicted of driving while intoxicated and subsequently charged and convicted of a felony in that State of involuntary manslaughter. Double jeopardy was held not to apply because the offense of involuntary manslaughter being a felony was beyond the jurisdiction of the inferior court which heard and tried the offense of driving while intoxicated.

[2] Although defendant captions his legal contention as "double jeopardy," it is actually a plea of autrefois convict, which is separate and distinct from a plea of double jeopardy, the latter being applicable only in capital cases, although, in practical effect, it is the same: Commonwealth ex rel. Papy v. Maroney, 417 Pa. 368, 207 A. 2d 814 (1965). The defense of autrefois acquit or autrefois convict is provided by the Act of March 31, 1860, P. L. 427, sec. 30, 19 PS §464.

Conversely, if a defendant is acquitted of involuntary manslaughter, he cannot subsequently be tried for murder and volun-

Prior to the Waller and Ashe cases, the rights of a defendant to claim a previous acquittal or conviction were reasonably well defined. The fifth amendment of the United States Constitution provided that, ". . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . ." This restriction was not limited to capital cases as in Pennsylvania: Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872 (1874); Wade v. Hunter, 336 U.S. 684, 93 L. Ed. 974, 69 S. Ct. 834 (1949).

The Pennsylvania Constitution, article I, sec. 10, provides:

"No person shall, for the same offense, be twice put in jeopardy of life or limb; . . ."[3]

However, certain statutory protection is granted to a defendant from multiple prosecutions. Mention has previously been made to that dealing with the defense of autrefois convict and autrefois acquit, but, in addition, the Act of March 31, 1860, P. L. 427, sec. 51, 19 PS §831, provides:

". . . no person tried for such misdemeanor shall be liable to be afterwards prosecuted for felony on same facts, . . ."[4]

---

tary manslaughter: Commonwealth v. Thatcher, 364 Pa. 326, 71 A. 2d 796 (1950).

Of course, inconsistent verdicts will prevent a sentence. So in Commonwealth v. Moss, 173 Pa. Superior Ct. 367, 98 A. 2d 372 (1953), defendant was convicted of an assault and battery, aggravated assault and battery, assault and battery with intent to ravish and rape. Prior to sentence he was tried for fornication and bastardy and acquitted. This prevented a sentence for rape, but not as to the offense of assault and battery with intent to ravish.

[3] Pennsylvania cases holding this section of the Constitution applicable only for capital cases are: Commonwealth ex rel. Papy v. Maroney, supra; Commonwealth v. Simpson, 310 Pa. 380, 165 Atl. 498; Commonwealth v. Beiderman, 109 Pa. Superior Ct. 70, 165 Atl. 765 (1933).

[4] Certain exceptions not here involved are listed by the statute.

In addition, if a defendant is charged with a greater offense, he may be convicted of any constituent offenses contained therein without regard to whether they are either or both felonies or misdemeanors: Harman v. Commonwealth, 12 S. & R. 68 (1824).

When a person has been convicted or acquitted of a crime which is a constituent of a greater crime, he may not thereafter be prosecuted for the greater crime: Commonwealth ex rel. Papy v. Maroney, supra; Commonwealth v. Bishop, 182 Pa. Superior Ct. 151, 126 A. 2d 533 (1956).

In order to determine how the law has been changed in Pennsylvania by Waller and Ashe, supra, it must be determined what these cases actually hold. The result of the cases is, of course, obvious. Both convictions were, in effect, set aside. The reasoning is not nearly as readily apparent. Both cases were decided with an eight-Justice court. In Ashe, no more than three Justices agreed upon the reasoning used to achieve the result. Waller is better defined.

Initially, we agree with the contention of defendant that the defense of double jeopardy is applicable to the States and must be afforded full retrospective application: Commonwealth v. Richbourg, 442 Pa. 147, 275 A. 2d 345 (1971).

Both Ashe v. Swenson, supra, and Waller v. Florida, supra, were argued on November 13, 1970, and decided on April 6, 1970. The Ashe case involved a robbery on January 10, 1960, of six men engaged in a poker game at a private residence in Missouri. Either three or four masked men armed with a shotgun and pistols broke into the game and robbed each of the poker players of their money and fled in a car belonging to one of the victims. The car was discovered shortly thereafter in a field and three men were arrested by a State Trooper while walking on a highway

not far from the car. Petitioner was arrested by another police officer some distance away. In the first trial, defendant was accused of robbing the victim, Knight. This resulted in a verdict of not guilty. Six weeks later he was brought to trial again for the robbery of another victim, Roberts. He filed a timely motion asking that the charge be dismissed because of his previous acquittal. The second trial proceeded. He was convicted and sentenced to 35 years in the penitentiary. This was affirmed by the Supreme Court of Missouri. Four years later, by collateral attack in the State courts, the conviction was again affirmed. The matter then came by habeas corpus to the United States District Court which denied relief based on the United States Supreme Court decision of almost an identical factual situation: Hoag v. New Jersey, 356 U.S. 464, 78 S. Ct. 829, 2 L. Ed. 913 (1958). By use of Benton v. Maryland, 395 U.S. 784, 89 S. Ct. 2056, the Supreme Court in the present case held that the question is no longer whether collateral estoppel is a requirement of due process, but whether it is part of the Fifth Amendment guarantee against double jeopardy. Collateral estoppel, therefore, can no longer be left to the State court's determination of "fundamental fairness," but is a constitutional fact which must be examined through the entire record. In the majority opinion by Stewart, J., with Black and Harlan, JJ., concurring, collateral estoppel is defined at 397 U.S. 443:

". . . when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future law suit."

In determining whether or not a previous judgment of acquittal was based on a general verdict, the court is to, page 444, " 'examine the record of a prior

proceeding, taking into account the pleading, evidence, charge and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all of the circumstances of the proceedings.' "

The only justice who did not write an opinion was White. Chief Justice Berger dissented. Justice Stewart felt that whatever else North Carolina v. Pearce, 395 U.S. 711, 717, holds, page 446, ". . . it surely protects a man who has been acquitted from having to 'run the gantlet' a second time."

Justice Black states that the double jeopardy clause of the Federal Constitution now grants protection to a defendant from the hazards of trial and possible conviction more than once for the same offense, page 448, ". . . collateral estoppel is a basic and essential part of the Constitution's prohibition against double jeopardy." The third justice concurring with Justice Stewart along with Black is Justice Harlan. He wishes to make it explicit that he does not understand the court's opinion in any way to intimate that the double jeopardy clause embraces to any degree that "same transaction" concept reflected in the opinion of Justice Brennan.

Justice Brennan, along with Justices Douglas and Marshall concurring, states that the Federal and State standards must now be identical and that, page 453, "In my view, the Double Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode or transaction." He then, however, lists by footnotes nos. 7 and 11 certain exceptions, one of which is if no single court had jurisdiction of all of

the alleged crimes. The dissent of Chief Justice Berger is that the court has expanded a sound basic principle beyond the bounds or needs of its rational or legitimate objectives to preclude harassment of an accused.

On its facts, Ashe is clearly distinguishable from the instant case. There, it was determined that defendant was not, in fact, present at the scene of the offense and, therefore, the State should not be given a second opportunity to determine that he was present. In commenting on this facet the District Court of Florida in State of Florida v. Conrad, 243 S. 2d 174 (Fla. District Ct. of Appeal) (1971), at page 177, stated, "We have yet to be told as to how the doctrine of collateral estoppel would apply in a similar factual situation had the trial on the charge of robbing Knight resulted in a verdict of guilty." The majority of the court did not accept the "same transaction concept." This the Third Circuit Court of Appeals similarly held in United States ex rel. Brown v. Hendrick, 431 F. 2d 436 (1970). There, the court held that neither Ashe nor Waller required a reversal[5] under either the "col-

_____

[5] Similarly Ashe and Waller have been raised in a series of decisions discussed and rejected as inapplicable. Their consideration is helpful in resolving the case at bar. In United States v. Keine, 436 F. 2d 850 (1971, Tenth Circuit), defendant was convicted of conspiracy to manufacture narcotics. Previously, he had been convicted of selling narcotics. Defendant relied on Ashe and Waller. This defense was not accepted by the court. The previous trial had been in a State court. It was held that there were several overt acts not considered at the first trial which thereby distinguished the cases relied upon in arriving at a conviction in the second trial.

In United States v. Fusco, 427 F. 2d 361 (7th Cir., 1970), a defendant was tried for theft from interstate shipment of 470 gallons of gasoline. He was tried, convicted and the conviction was reversed. Subsequently, he was charged with possession of the same gasoline upon the same evidence. The contention that Ashe prevented the second conviction was accepted. However, the seventh circuit held that the Supreme Court has not adopted the same trans-

lateral estoppel" or "same transaction" tests where a defendant was first tried for indecent exposure and later for rape.

Although it would appear most unlikely that the jury in the case at bar would find defendant guilty if he had not crossed the center line, a determination of guilt was not limited solely to that issue. In the charge, the

---

action test. It did feel that, page 362, ". . . they have clearly gone beyond the 'same evidence' test. The only test left is that indicated by the definition of 'collateral estoppel' as defined in the opinion of the court in Ashe." Using it, the ultimate fact of defendant's involvement in the theft was previously decided against the government. However, to demonstrate the inapplicability of the same transaction test, the court gave the example of a man who robs a bank and, while escaping, kills a man. Conviction for bank robbery would not establish the ultimate fact to be determined during a prosecution for murder. Therefore, collateral estoppel would not apply.

In State of Florida v. Conrad, supra, a defendant entered a guilty plea in a municipal court of unlawfully taking and using a car. Subsequently, in State court he was prosecuted for breaking and entering a building and larceny. He attempted to use the previous guilty plea to prevent prosecution of the greater offense. This was denied. In discussing the consequences of Ashe, the court held, page 176: "That case did not hold, nor can the court's opinion be considered valid authority for the proposition, that the constitutional protection against double jeopardy encompasses every criminal offense arising out of the same transaction, once jeopardy attaches for any single one of such offenses." And, page 177: "Whatever else the Ashe case stands for, it does not mean that separate and distinct offenses arising out of a criminal frolic or transaction amount to the 'same offense' within the constitutional guarantee against double jeopardy." To demonstrate the absurdity of such a conclusion, the court gave this example: Suppose that defendant breaks and enters and steals a car, killing a watchman and two blocks away runs a red light and is arrested by a municipal police, would a guilty plea to breaking and entering bar a subsequent prosecution for murder? If so, it assumes presumedly a guilty plea of the traffic violation would likewise arise out of the same transaction.

jury was informed of various sections of The Vehicle Code which could be considered, i. e., reckless driving, driving across the center line, failing to keep to the right-hand side of the road and failure to give at least one-half of the main travel portion of the highway on passing. In addition, guilt could be based on falling asleep under the circumstances of this case.

Therefore, in that the "same transaction" rule does not appear to be the law, because an exception is granted if the matter cannot be heard in the same court even though there by a unity of judicial system and finally by an examination of the entire record, a jury could have grounded its verdict upon an issue other than that by which defendant seeks to foreclose its consideration, we do not believe Ashe to require a dismissal of the charge.

Waller v. Florida, supra, involved a completely different factual situation but more akin to our own. The Chief Justice who was the sole dissenter in Ashe wrote the majority opinion in Waller. Defendant was one of many who removed a canvas mural from the City Hall of St. Petersburg, Fla., and carried it through the streets. During a scuffle as a result of a confrontation by police officers, the mural was eventually recovered but in a damaged condition. The city filed charges for violation of two ordinances: (1) destruction of city property, and (2) disorderly breach of the peace. Defendant was tried in St. Petersburg Municipal Court, found to be guilty on both counts and sentenced to 180 days in the county jail. Thereafter, the State of Florida tried him for grand larceny based on the same acts which resulted in a conviction and a sentence of six months to five years, giving credit for the 170 days previously served on the sentence of the municipal court. Throughout, defendant contended double jeopardy. Two basic assumptions were made by the

United States Supreme Court in its reversal. First, that the second trial on the felony charge, 397 U. S. at 390, "was based on the same acts of the appellant as were involved in the violation of the two city ordinances" and, second, that the ordinance violations were included offenses of the felony charge. The Chief Justice limited the issue, page 390, to "What is before us is the asserted power of the two courts within one State to place the petitioner on trial for the same alleged crime."

The State of Florida had a concept of separate sovereignties between the State and the municipality. Pennsylvania has never entertained such a concept.

In a separate concurring opinion by Justice Black, he qualifies his concurrence by his dissent in Bartkus v. Illinois, 79 S. Ct. 676, 359 U. S. 121 (1959). This case held that a defendant could be acquitted in Federal court for bank robbery and tried and convicted in a State Court for the same robbery on substantially the same evidence. He also relied on his dissent in Abbate v. United States, 79 S. Ct. 666, 359 U. S. 187 (1959), which presented the same issue and permitted trial in both courts. He believed in that dissent that the Bill of Rights' safeguard against double jeopardy was intended to establish a broad national policy. He notes, however, that Pennsylvania is one of 27 States out of 28 that have passed upon the problem that permitted prosecutions in both State and Federal courts, citing Commonwealth ex rel. O'Brien v. Burke, 171 Pa. Superior Ct. 273, 90 A. 2d 246 (1952). He believes, page 150, ". . . double prosecutions for the same offense are so contrary to the spirit of our free country that they violate even the prevailing view of the Fourteenth Amendment . . ."

In a concurring opinion, Justice Brennan concluded that the "same transaction rule" and double jeopardy

bars a second trial, since all charges grow out of the same criminal episode.

Summarizing the holding, at page 395, the Chief Justice wrote:

"We decide only that the Florida courts were in error to the extent of holding that 'even if a person has been tried in a municipal court for the identical offense with which he is charged in a state court, this would not be a bar to the prosecution of such person in the proper state court.' "

It is noted by footnote no. 6 of the opinion that if a defendant had committed offenses not embraced within the charges against him in the municipal court, he may or may not be subject to further prosecution depending on statute of limitations and other restrictions not covered by the double jeopardy restraints of the Constitutions of Florida and the United States.[6]

By several dissents, Justice Hoffman, of the Pennsylvania Superior Court, has criticized the test devised to determine the same offense because they fail to note that the offenses express the State's concern with regard to the interest that it desires to protect: Commonwealth v. Brown, 216 Pa. Superior Ct. 81, 260 A. 2d 476 (1969), decided before Ashe and Waller, but reaffirmed in a dissent in Commonwealth v. Mills, 217 Pa. Superior Ct. 269, 269 A. 2d 322 (1970), after Ashe and Waller. Justice Hoffman writes in Commonwealth v. Brown, supra, page 85:

---

[6] The only further use by the United States Supreme Court of Waller was in Colombo v. New York, 400 U.S. 16, 27 L. Ed. 2d 16, 91 S. Ct. 99, decided October 19, 1970, where by a per curiam reversal of the Court of Appeals of New York a judgment was vacated and remanded for further consideration in the light of Waller. There, defendant had refused to testify before a grand jury even though granted immunity and sentenced for criminal contempt of 30 days and $250. Later, he was tried for criminal contempt under the Penal Code of New York.

"I agree that different interests may give rise to several offenses from one set of facts, and that both offenses may be punished. I would, however, limit the state from multiplying offenses so as to impose excessive and unfair punishment."

Using the test of Justice Hoffman, it would be clear in the case at bar that the involuntary manslaughter conviction should be sustained. Certainly, there is an entirely different legitimate interest by a State to prosecute a person who kills two young people by automobile upon the highway as opposed to the driver who merely passes left to center or fails to stay on his own side.

In Commonwealth v. Smith et al., 217 Pa. Superior Ct. 148, 269 A. 2d 138 (1970), a per curiam affirmation is found of a conviction by a Common Pleas Court of defendant of riot and related offenses based on the same acts which gave rise to a previous conviction before a justice of the peace of disturbing the peace and disorderly conduct. In a dissent by Justice Hoffman, joined by Justice Spaulding, the Constitutions of Pennsylvania and Florida are compared in the light of the Waller case and it is concluded that they are, for all practical purposes, indistinguishable. Therefore, the dissent feels that the second prosecution should be denied. In the case at bar, under our judicial system the summary offense of failing to drive to the right of center could not have been heard in any event by the Court of Common Pleas in the first instance. Further, that one of the two assumptions by the Supreme Court in deciding Waller was that the ordinance violations were includable offenses of the felony charge. There was no discussion as to whether the ordinance violations could have been heard by the State court in the first instance. No effort has ever been made to reverse the Superior Court in Commonwealth v. Bergen, supra, which held that an acquittal in a summary proceeding before a justice of the peace or inferior mag-

istrate is not a bar to an indictment for a felony or misdemeanor in a Court of Quarter Sessions or Oyer and Terminer upon the trial of such an indictment because defendant could not be convicted of the offense heard before the justice.

As in Percy v. State, 443 F. 2d 1232 (8th Cir., 1971), even though the evidence at both trials was similar, the gravamen of the two offenses are wholly different. Defendant was previously convicted of indecent molestation which was reversed. He was then retried for kidnapping. Double jeopardy was denied. Ashe v. Swenson, supra, was held to be of no avail. It was held that if the two offenses are not, however, the same then the double jeopardy clause by its own terms does not prevent further prosecution.

Consideration should be directed to a practical facet of prosecution. If a defendant can successfully prevent prosecution for a serious offense arising from a particular "criminal frolic" by pleading guilty to a minor offense arising from that "frolic," he can successfully defeat a warranted prosecution. Further, the opportunity for collusion between himself and the police officer or any person who elects to file a charge even on information received is great. So, if a defendant killed an innocent person by his drunken reckless driving and the police officer elects to initially charge him with reckless driving, if defendant is correct in his position, he would be able to defeat that prosecution merely by the payment of a $10 fine and $5 costs, as in this case. Such a result would be intolerable.

Wherefore, the motion for a new trial and motion in arrest of judgment on the grounds of double jeopardy, collateral estoppel, autrefois acquit or any similar legal theory are both denied as to both convictions.

II. *Did the court err in permitting the introduction of evidence that defendant had consumed alcoholic beverages during the course of the day prior to the fatal accident?*

The general rule concerning this subject is:

"When the operator of a motor vehicle falls asleep at the wheel, the courts have, in addition to the fact of sleep, paid particular attention to the preceding events in determining whether or not he was negligent in continuing to drive. The focal point of inquiry is whether or not he continued to operate his motor vehicle after such warning of the likelihood of sleep that continuing to drive constituted marked disregard of the safety of others. Such warnings may consist of a variety of circumstances, such as the lack of sleep, the length of the time the driver had been at the wheel before he fell asleep, express premonitory symptoms that sleep is about to overtake the driver, such as yawning, drowsiness, napping, etc., the fact that the driver had imbibed intoxicating liquor, or had engaged in strenuous or tiring activities before taking the wheel": 8 Am. Jur. 2d p. 246.[7]

When the jury accepted that defendant himself was driving, it was required to determine under the charge based on Commonwealth v. Smoker, 204 Pa. Superior Ct. 265, 203 A. 2d 358 (1964), whether defendant was sleeping at the time of the accident and, if so, what induced that sleep. In Commonwealth v. Smoker, supra, defendant had only seven hours sleep in a preceding 48-hour period and had been awake continuously for 14 hours when the accident occurred. In the case at bar, the jury could have believed from the

[7] See also 28 ALR 2d 56, sec. 29; Devlin v. Morse, 254 Mich. 113 (1931); and Diamond State Telephone Company v. Hunter, 21 A. 2d 286 (S. Ct. of Delaware (1941)).

testimony of the Commonwealth that defendant did not work the night shift of the day prior to the accident, was up all day during the day before the accident or a total of between 25 and 26 hours.[8]

In this case it was, therefore, important for a jury to correctly determine the issue of self-induced voluntary exhaustion to know what defendant, in fact, did during that period. For example, it was stipulated and read to the jury that on the evening immediately prior to the accident, which occurred at about 12:47 a.m. on January 24, 1970, defendant telephoned his employer about 11 p.m. to inform him that he was not able to report to work that night because of personal illness. The jury was entitled to know what type of personal illness was referred to and what was the condition of defendant to cause him to do so, if anything. Much testimony was received of defendant prior to the court permitting examination as to consumption of alcoholic beverages as to the various bars, taverns and grills that the parties frequented during the course of the day. All of this was without objection.

---

[8] The principle of Commonwealth v. Smoker, supra, as to failure to receive proper sleep which induces an accident was accepted as a correct principle of law in Commonwealth v. Clowser, 212 Pa. Superior Ct. 208, 239 A. 2d 870 (1968). This doctrine has also been used in involuntary manslaughter cases in Commonwealth v. James, 49 Berks 140 (1957), which holds that when an automobile driver in a state of exhaustion falls asleep though he does not will it to be so, he is negligent and is chargeable with knowledge that an individual in a state of exhaustion is likely to fall asleep and a conviction of involuntary manslaughter may be based thereon. In Commonwealth v. Stankovic, 54 Lanc. Rev. 121 (1954), a defendant was held guilty of involuntary manslaughter where he went without sleep voluntarily for an unreasonable and unaccustomed period.

In Spencer v. Bright, 159 F. Supp. 16 (1958), the United States District Court for Kentucky, applying Pennsylvania law, held continuing to drive after one feels drowsy may be negligence.

As to why defendant called in that he was unable to work he responded, ". . . we was all shooting pool together so it was so late and everything that I decided I wasn't going to work, and I didn't get no rest, and I was sleepy, and I know if I goes on the job, I would automatically go to sleep so I just didn't go."

Relying on Commonwealth v. Carnes, 165 Pa. Superior Ct. 53, 67 A. 2d 675 (1949), and Commonwealth v. Rosenberger, 183 Pa. Superior Ct. 401, 132 A. 2d 359 (1957), the court for the purpose of permitting the Commonwealth to show the condition of defendant immediately prior to and at the time of the accident permitted evidence of drinking. It started by the purchase of a pint of Windsor Whiskey at about 2:30 to 3 in the afternoon of which defendant admitted taking two or three drinks followed by the purchase of a second bottle, being a half-pint of whiskey, that evening. This was followed by the drinking of a beer at a tavern around 8:30 or 9 p.m. Immediately after the receipt of this evidence, the court cautioned the jury that there is no evidence in the case that defendant was intoxicated, that testimony of consumption of alcoholic beverages cannot be used unless it can be shown that defendant was driving under the influence of intoxicating liquors, but that an exception is to demonstrate why a defendant fell asleep while driving his car. Therefore, the jury was instructed:

"Now this evidence of the consumption of alcoholic beverages then can be used by you only in connection with whether or not this had any effect on his sleeping, and if so, should he have been driving he would have known or should have known that it would have caused him to go to sleep while driving; not for the purpose of mere concluding that he was or was not under the influence of intoxicating liquor when he was driving. This is out of the case."

Likewise in the charge, to which no exception was taken:

"Let's assume that you find that the defendant was in fact driving the car and that he fell asleep, and that as a result of falling asleep, there was a reckless act performed upon the highway. If you find that, then you want to consider why he falls asleep. Is this a matter of falling asleep unintentionally and inadvertently merely because of something that is beyond his control or did he fall asleep because of not having slept as an average person would perhaps the night before, and going for a prolonged period without sleeping? Was the fact that he allegedly consumed a portion of two bottles of an alcoholic beverage a factor which caused him along with the failure to sleep the night before, if that's true, to go to sleep? Did this man know that by drinking, if he did, and not sleeping for a prolonged period, that he would be more inclined to go to sleep than if he didn't drink? Now if you find that the sleeping which occurred in this case was what might be called self-induced or something that a person takes a gamble on, knowing that it might happen and it does in fact happen, and as a result of it, two young people are killed, and that that conduct then arises to the level of recklessness,—and we will have to then look at what happened down on the highway before we can determine that—then it is possible that the sleeping can be used with other factors as a basis to establish the guilt of the defendant.

"Now if the defendant did all that the Commonwealth contended, that he did not go to sleep as a reasonable person should have the night before; that he ran all during the course of the day from hither and yon; that he did in fact consume a portion of two bottles of liquor; that he went down the highway and fell asleep, but he was on his own side of the road, and

the other car came across and hit his car, all of that testimony is of no consequence, and the defendant cannot be found guilty of negligence which was reckless because that conduct was not the direct cause of the accident. So we have to look as to who was really responsible for the accident, who was guilty of negligence, and if they were guilty of negligence, did it become and arise to the level of recklessness on the part of the defendant?

"I want to caution you again as I have cautioned you several times previously or at least once previously concerning the question of drinking. The courts are very, very reluctant to ever permit a jury to consider the question of consumption of intoxicating liquors by a defendant unless the Commonwealth can establish that the defendant was in fact under the influence of intoxicating liquors. This they were unable to establish in this case. However, the cases say that if in a criminal prosecution there is reckless or careless driving, which is the cause of the accident, the jury can consider whether the consumption of intoxicating liquors by the operator of the vehicle, the defendant, deprived the operator of the intellect and control which he would otherwise possess so that if a person, say, could have driven this car—let's say that the defendant could have driven it and not fallen asleep, even with his lack of sleep, but when you add to it the consumption of alcoholic beverages, he does in fact go to sleep, then that is material for your consideration in determining whether or not he is guilty of reckless conduct. But you cannot, and I want to say it again, you cannot consider whether or not he is guilty of reckless conduct on the basis of driving while under the influence of intoxicating liquors because that has not been proven. You must disregard that. Likewise, you must not prejudice this defendant merely because

there was evidence that he was drinking intoxicating liquors. Many of us, of course, have a feeling that people should not consume alcoholic beverages and then drive upon the public highway. That feeling should not in anyway prejudice this defendant unless you find that there was a direct relationship between the drinking and the falling asleep and the reckless conduct, if there was such of the defendant."

The contention of defendant is that Commonwealth v. Carnes, supra, and Commonwealth v. Rosenberger, supra, do not correctly reflect the Pennsylvania law on the question of intoxication. Those cases hold that in a prosecution for involuntary manslaughter, proof of the consumption of alcoholic liquors by the operator to show that he was deprived of that clarity of intellect which he would otherwise possess is relevant particularly where other manifestations of the operation of the vehicle under the influence may be inferred from the evidence. This, he says, is contrary to the teachings of Fisher v. Dye, 386 Pa. 141, 125 A. 2d 472 (1956), for there is added that the mere fact of drinking intoxicating liquors is not admissible being unfairly prejudicial unless it reasonably establishes a degree of intoxication which proves unfitness to drive.[9]

The evidence admitted concerning consumption of alcoholic beverages, however, was not on the theory of attempting to prove intoxication, but rather to permit the jury to determine whether or not defendant was guilty of reckless conduct by falling asleep after

---

[9] See also Vignoli v. Standard Motor Freight, Inc., 418 Pa. 214, 210 A. 2d 271 (1965); Balla v. Sladek, 381 Pa. 85, 112 A. 2d 156 (1955); Landy v. Rosenstein, 325 Pa. 209, 188 Atl. 855 (1937); Morreale v. Prince, 436 Pa. 51, 258 A. 2d 508 (1969); Billow et al. v. Farmers Trust Company, 438 Pa. 514, 266 A. 2d 92 (1970); Reedy v. Brown, 395 Pa. 382, 150 A. 2d 707 (1959).

a prolonged period of lack of rest and the consumption of alcohol and many other activities during that period. Although no case is found directly in point, some may be used by analogy. In Commonwealth v. Piper, 183 Pa. Superior Ct. 229, 130 A. 2d 195 (1957), a conviction for involuntary manslaughter was sustained where an intoxicated owner of an automobile induced a woman who had no operator's license in a bar to drive his motor vehicle. The evidence did not establish that the woman was under the influence but she had had no previous driving experience. While attempting to operate the vehicle at night in city traffic, she apparently skidded on railroad tracks, struck another vehicle and killed one of the passengers. Guilt was found as being the natural and probable consequences of defendant in permitting an unlicensed operator to drive under the circumstances of that particular case. So in the instant case, where defendant is extremely tired and adds to it the consumption of alcoholic beverages, the jury could consider the combined circumstances in determining whether there was reckless conduct.

In Commonwealth v. Rosenberger, supra, defendant struck the victim and then drove from the scene. In a statement, he admitted that he stopped after the collision, but then said, " 'If I hit anybody believe me I never felt it . . . ' ": page 405. The issue of whether he knew or did not know whether he hit the victim was of some import. The court permitted evidence that he had visited a number of taverns between 4 in the afternoon and the time of the accident in the evening and admitted drinking at least five beers, but he claimed that the beers did not affect him. So, in the instant case, defendant claimed that the drinking of the whiskey did not affect him, but that the drinking of a beer would cause him to become drowsy. He admitted to the drinking of but one beer.

Finally, in Brazel v. Buchanan, 404 Pa. 188, 171 A. 2d 151 (1961), tried by McKay, J., of this court, plaintiff could not establish that defendant was under the influence of intoxicating liquors but could establish that he had been drinking. This testimony was admitted only if the jury found that he was driving recklessly, but otherwise it was to be disregarded. In sustaining the charge the Supreme Court held, page 158:

"The many limitations placed by the court on the jury's consideration of the evidence of drinking kept its ruling within the limitations on the subject as announced by the appellate courts of the Commonwealth."

So, in the instant case, the jury was cautioned on several occasions, both at the receipt of the evidence and at the time of the charge, as to the limited use for which evidence of drinking could be received. The issue was specifically defined for them at the time that the evidence was first heard. To have denied the Commonwealth the opportunity to demonstrate this most important factor in the consideration of sleeping by defendant at the time of the accident might have resulted in a gross miscarriage of justice.

III. *Did the court err in denying defendant's motion for a mistrial when the prosecution witness referred to defendant's first case?*

On direct examination of the witness, John Yourga, he was asked: "Now Mr. Yourga, you have pointed out on this drawing the Ford car, is that correct, the position you think it was in? Answer: I didn't testify in the last case, I mean the last hearing . . . " It is to be noted that the answer was volunteered, unsolicited and gratuitous.

Defendant refers to a number of cases where the

appellate courts of this State as well as our own Common Pleas Court have made every effort to protect a defendant from an accusation of involvement in previous criminal activities. That was the very basis under which a new trial was granted in this case previously. However, defendant cites no case, nor has any case come to this court's attention which requires that an unsolicited gratuitous comment by a witness that he did not testify in the last case or last hearing requires a new trial. It is common to refer to testimony elicited in previous hearings or previous trial of this same case. This does not mean that defendant was engaged in other criminal activity.

Wherefore, we find no merit in the third contention of defendant. Hence, we deny defendant's motion for new trial and his motion in arrest of judgment.

### ORDER

And now, September 1, 1971, defendant's motion for a new trial and defendant's motion in arrest of judgment are both denied as to both convictions.