428 A.2d 192

COMMONWEALTH of Pennsylvania,

v.

Galen CONRAD, Appellant.

Superior Court of Pennsylvania.

Submitted March 6, 1980.

Filed April 3, 1981.

Petition for Allowance of Appeal Denied Aug. 12, 1981.

Harold F. Woelfel, Jr., Selinsgrove, for appellant.

Thomas C. Clark, District Attorney, Middleburg, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The Appellant, Galen Conrad, was convicted after a jury trial on charges of involuntary manslaughter [1] and engaging

---

[1]. A violation of the Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 2504.

in a speed contest.[2] Following the denial of post-trial motions, and sentencing, the Appellant filed the instant direct appeal raising several allegations of error. After a thorough review, we have concluded that there is merit in the Appellant's claim that there was insufficient evidence to support his conviction of involuntary manslaughter, and we will reverse that conviction.

■ The test for sufficiency of evidence is whether accepting as true all of the evidence and all reasonable inferences deductible therefrom, upon which the jury could have based its verdict, the evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 353 A.2d 387 (1976). In evaluating the sufficiency of the evidence, we accept all of the evidence favorable to the Commonwealth as true, and resolve all disputed facts in favor of the Commonwealth. *Commonwealth v. Ingenfritz*, supra.

The record, read in that light, shows that on May 3, 1975, the Appellant was driving a brown Plymouth automobile on U. S. Route 104, in a southerly direction from Middleburg, in Snyder County, towards Shade Mountain. One Roger Lee Heintzelman, while driving a red Pontiac, approached from the rear and began "tailgating" the Appellant's automobile. The Appellant increased his speed and Heintzelman also increased his speed, over some distance, but Heintzelman eventually overtook and passed the Appellant, and pulled away from the Appellant, increasing the distance between them. Approximately one-half mile after the Appellant's car was passed by Heintzelman, the Appellant turned his vehicle around and returned in a northerly direction on Route 104 toward Middleburg. After proceeding some distance in the southerly direction after he had passed the Appellant, Heintzelman apparently also decided to turn around and head back in a northerly direction towards

2. A violation of the 1959 Vehicle Code, Act of April 29, 1959, P.L. 58, § 1041 [1040], added January 8, 1960, P.L. (1959) 2118, § 3, 75 P.S. § 1041. Such conduct is now covered by the 1976 Vehicle Code, Act of June 17, 1976, P.L. 162, No. 81, § 1, effective July 1, 1977, 75 Pa.C.S.A. § 3367.

Middleburg. He did so at a high rate of speed. When Heintzelman eventually caught up with the Appellant's vehicle, close to Middleburg, Heintzelman again attempted to pass on the two lane highway. When he veered into the left lane, Heintzelman saw another vehicle in that lane heading in a southerly direction. He pulled back into the right lane, behind the Appellant's car, but was unable to brake his vehicle sufficiently to avoid a collision with the rear end of the Appellant's car. The Appellant's car spun out of control as a result, and collided with the vehicle approaching from the southerly direction on the other side of the road. Appellant's young daughter was a passenger in his car at the time of the collision and tragically lost her life as a result of the accident.

It is the theory of the Commonwealth that the Appellant was engaging in a speed contest, in violation of the Motor Vehicle Code, at the time of the collision, and was criminally responsible for the death of his daughter which resulted from that conduct.

 In order to sustain a conviction for involuntary manslaughter, there must be evidence of a disregard for human life or an indifference by the Defendant to the consequences of his actions. *Commonwealth v. Busler*, 445 Pa. 359, 284 A.2d 783 (1971); *Commonwealth v. Kaulback*, 256 Pa.Super. 13, 389 A.2d 152 (1978); *Commonwealth v. Greer*, 232 Pa.Super. 448, 335 A.2d 770 (1975); *Commonwealth v. Clowser*, 212 Pa.Super. 208, 239 A.2d 870 (1968). In determining the presence of such disregard or indifference, we must look to the violation itself together with all of the surrounding circumstances. *Commonwealth v. Busler*, supra; *Commonwealth v. Clowser*, supra. It is the position of the defense while there may have been evidence to show that the Appellant was engaged in a contest of speed several minutes prior to the time of the collision, when Heintzelman first tailgated the Appellant and then passed him as the cars proceeded in a southerly direction, there was insufficient evidence to prove that the Appellant was engaged in any violation of the Vehicle Code, specifically including a speed contest, as he traveled in a northerly direction at the time of

the accident several minutes later. We agree with that contention.

In support of its position that sufficient evidence was produced to indicate that Appellant was engaged in a speed contest on his return trip to Middleburg, the Commonwealth relies upon the evidence offered by witnesses Ronald Schon and Anna Fogel. A review of the testimony of Ronald Schon reveals that on the date of the accident he was walking along Route 104 in a southerly direction, trying to hitchhike a ride. He saw and described the conduct of the two vehicles as they proceeded past him in the southerly direction, from Middleburg toward Shade Mountain. He then was asked to describe his observation of the two cars as they passed him a few minutes later going in the northerly direction. He first noticed the Appellant's brown car going in a northerly direction at a speed he described as "fast but not extremely fast". He estimated the speed to be approximately 60 to 65 miles per hour. A few seconds later, he noticed the red Heintzelman vehicle following in the same northerly direction. When he first noticed the two cars the red car was approximately 400 feet behind the Appellant's vehicle, but closing the gap between them quickly. The Heintzelman vehicle crossed the center line of the road as it came around a corner and he estimated its speed at between 70 and 75 miles an hour. He watched the cars as they went past and it appeared to him that the Appellant's car was slowing down as it approached the town. He saw the Heintzelman car moving very quickly up towards the rear of the Appellant's car, and then start to pass. The witness stated he next observed the Heintzelman car swerve back behind the Appellant's car, saw the brake lights come on and heard the sound of brakes being applied. Schon then lost sight of the vehicles because of the elevation of the road, but almost immediately heard a crash. Reading all of this testimony in a light most favorable to the Commonwealth, we do not find sufficient evidence upon which one could base the conclusion that the Appellant was engaged in a speed contest with Heintzelman just before the unfortunate accident in which the Appellant's daughter was killed.

We then turn to the evidence offered by Anna Fogel, as well as the testimony of her husband. Mrs. Fogel testified that she observed the two cars proceeding north as they passed her home on Route 104. In testifying as to their speed, she could only state that "they were really going". Just as they passed her house, proceeding in a northerly direction, she said that the cars were about three car lengths apart, with the Appellant's vehicle in front. She saw that the Heintzelman vehicle was gaining rapidly on the Appellant's vehicle. After they passed her house, she watched them proceed down the road and she saw the lights appear on the back of the Heintzelman car, presumably the brake lights. A couple of seconds after that she heard the sounds of a collision and saw dust and smoke. It is further noted that both Anna Fogel and her husband testified that they believed that both vehicles may have been going at high speed because they heard the "roar" of engines as the cars passed. Our review of this evidence again leads us to the conclusion that it was insufficient to establish that the Appellant was engaged in a speed contest with Heintzelman, as both cars proceeded in a northerly direction on Route 104, just prior to the collision. The combined testimony of the Fogels and Schon lead to the firm conclusion that the Appellant was decreasing his speed as he passed by them, but that Heintzelman increased his and attempted to pass the Appellant at high speed.

In our review of the sufficiency of the evidence issue, we should also summarize the testimony relevant to this issue presented by other witnesses. Roger Heintzelman testified essentially that after he turned around at the top of Shade Mountain and began his return trip in a northerly direction towards Middleburg, he did not feel or believe that he was still engaged in any speed contest with the Appellant. He did not offer any testimony which would lead to the conclusion that the Appellant's conduct at any time on the return trip to Middleburg, prior to the collision, would have suggested a contest between the two drivers. Both the Appellant and his passenger testified that they were not even aware that Heintzelman was behind them on the return trip.

While there was some evidence that the Appellant was driving five to ten miles per hour over the speed limit as he drove in a northerly direction on Route 104 to Middleburg, it is clear from all of the evidence that he was slowing his car to the legal limit, or below, in compliance with a reduction in the posted speed limit, some distance prior to the point of collision. The driver of the third vehicle involved in the accident stated that there was nothing irregular about the Appellant's progress that gave that witness any reason for concern prior to the collision.

Thus, while the Appellant was shown to have engaged in a speed contest approximately ten minutes before the collision, as he headed in a southerly direction away from town, there is a complete absence of evidence showing reckless or grossly negligent conduct, or the violation of any Motor Vehicle Code provision just prior to the accident on his return trip to town. In *Commonwealth v. Root*, 403 Pa. 571, 170 A.2d 310 (1961), the Supreme Court pointed out that two essential separate elements of the crime of involuntary manslaughter include reckless conduct on the part of the accused and a direct causal relationship between that reckless conduct and the ensuing death. See also *Commonwealth v. Clowser*, supra. The record in the instant case shows a lack of such reckless conduct on the part of the Appellant just prior to and at the time of the collision. We have reviewed the decisions in the cases of *Commonwealth v. Honeycutt*, 227 Pa.Super. 265, 323 A.2d 775 (1974), *Commonwealth v. Hartle*, 200 Pa.Super. 318, 188 A.2d 798 (1963), and *Commonwealth v. Root*, 191 Pa.Super. 238, 156 A.2d 895 (1959), three cases involving manslaughter convictions arising out of deaths resulting from hazardous speed contests. In each of those cases, in which convictions were affirmed, there was evidence presented showing a continuity of reckless conduct on the part of each Defendant sufficient to create proof beyond a reasonable doubt that such reckless conduct continued up to the actual point of collision wherein death resulted, and that a causal connection existed between such conduct and the deaths. We find an absence of such evidence in this case.

■ Based upon our conclusion that the evidence was insufficient, we cannot affirm the Appellant's conviction on the manslaughter charge in this case. We note that no issue is raised by the Appellant regarding the sufficiency of evidence to sustain his conviction on the charged violation of the Motor Vehicle Code. The only remaining question is whether we should remand for resentencing. In *Commonweawlth v. Lockhart*, 223 Pa.Super. 60, 296 A.2d 883 (1972), this Court held that where the validity of a conviction on one count may have influenced the sentence on a remaining count or counts, all sentences should be vacated and the case remanded for resentencing on the valid count or counts, without consideration of the invalid one. Our Court has refused to remand a case for resentencing where the same would be a mere procedural exercise. See *Commonwealth v. Grant*, 235 Pa.Super. 357, 341 A.2d 511 (1975). Here, where the Appellant was sentenced to identical three to twenty-three month jail sentences on each charge, with an absence of any record of any other criminal conviction up to date of sentencing, we cannot be certain that the Appellant's convictions on multiple charges may not have influenced the sentencing court in the severity of sentence imposed. Thus, we believe it appropriate to vacate Appellant's sentence on the violation of the Motor Vehicle Code, and remand for resentencing on that charge alone.

■ We note that the remand for resentencing is appropriate, based upon our prior holdings cited above, only as a result of the reversal on one of the charges against the Appellant. This action should not be construed as an excusal of Appellant's failure to raise his claim of an improper sentence on the Vehicle Code violation in the lower court. See *Commonwealth v. Walls*, 481 Pa. 1, 391 A.2d 1064 (1978); *Commonwealth v. Boone*, 367 Pa. 168, 354 A.2d 898 (1978). In view of the remand however, it is appropriate that we briefly address, and specifically reject the Appellant's claim that his sentence on the conviction for engaging in a speed contest was illegal. He argues that the Motor Vehicle Code of 1976 provision effective at the time of his sentencing, as

set forth in 75 Pa.C.S.A. § 3367 did not provide for imprisonment for engaging in a speed contest. Appellant's sentencing was within the permissible sentencing limits established in the 1959 Motor Vehicle Code in effect at the time of the alleged criminal act, as well as at the time of Appellant's conviction. While 75 Pa.C.S.A. § 3367 was effective on July 1, 1977, prior to Appellant's sentencing on October 16, 1978, the Motor Vehicle Code of 1976, of which that section was a part, contained the following Savings Provision, in Section 4, which clearly made the sentences provided in the former Act of 1959 applicable:

> The provisions of Title 75 of the Pennsylvania Consolidated Statutes as added by this act shall not affect any act done, liability incurred, or right accrued, or vested, or affect any suit or prosecution pending or to be instituted to enforce any right or penalty, or punish any offense, under the authority of any statute repealed by this act.

Therefore, the lower court may properly sentence the Appellant pursuant to the provisions of the 1959 Act.

The Appellant's conviction and judgment of sentence on the manslaughter charge are reversed and vacated. The judgment of sentence for engaging in a speed contest is vacated, and the case remanded to the lower court for resentencing on that charge alone.